**COMMONWEALTH of Kentucky on relation of Davis WILLIAMS, County Attorney, Appellant,**

v.

**Willie WILSON, Appellee.**

Court of Appeals of Kentucky.

April 17, 1964.

Rehearing Denied Sept. 25, 1964.

Davis Williams, Munfordville, for appellant.

Mather & Bondurant, Hodgenville, for appellee.

PALMORE, Judge.

KRS 242.310 through 330 provide for the forfeiture of property used in violation of the local option laws. KRS 242.340 and 350 provide lesser remedies and penalties in the form of injunction, abatement, imposition of bond, and padlocking.

Following appellee's plea of guilty and conviction on a charge of illegally possessing alcoholic beverages in dry territory[1] the county attorney sued in the name of the state for the confiscation and forfeiture of the building owned by appellee in which said beverages had been found in his possession. In the alternative, the complaint demanded "that *in the event that the plaintiff is not entitled*[2] to the relief sought of

---

1. KRS 242.230.

2. Emphasis added.

a confiscation and forfeiture," the lesser measures set forth in KRS 242.350 be inflicted. The court found that the property had been so used as to constitute a nuisance under KRS 242.310, but in view of mitigating circumstances declined to adjudge a forfeiture and instead ordered the premises to be vacated and padlocked for a period of six months.

From the context of KRS 242.320(1) and 242.350(1) it seems clear that the authority of the court to padlock property rests on exactly the same ground as a forfeiture. It is not suggested that the facts in this case were not sufficient to authorize the padlocking of appellee's building, and he does not appeal from the judgment. It follows, then, that the facts also sustain the right of forfeiture unless, as appellee contends, it was within the discretion of the court to deny it in favor of the lesser relief under KRS 242.350. The sole question is whether, having alleged and proved the ground for and demanded a forfeiture, appellant was entitled to it as a matter of right.

The factual background of the case is of importance only insofar as it serves to explain and justify the reluctance of the trial court to inflict the harsh remedy of forfeiture. The property in question is a concrete block building in Horse Cave consisting of a restaurant and dance hall downstairs and living quarters above. It is said to be worth about $15,000. For a number of years it was owned and operated by Otis "Jelly Roll" Wilson, appellee's brother, and in December of 1959, when Jelly Roll conveyed it to appellee, had acquired a bad reputation as a bootlegging joint. Willie, the appellee, had gone to Louisville in 1941 and lived there as a law-abiding citizen until 1959. In the latter year he returned to Horse Cave because his wife was not in good health and because Jelly Roll wanted him to run the restaurant,

which he proceeded forthwith to do. Jelly Roll then conveyed the property to him without consideration. According to Willie, the reason for this transaction was that his brother "had trouble with his first wife and was going to get married again and thought he would have the same trouble. Said I am going to deed it over to you so you will have it."

The raid in which the illegal beverages were discovered on the premises was conducted in April of 1960. Jelly Roll denied any connection with the liquor. Willie was present and in charge. He pleaded guilty, but says now that the liquor was Jelly Roll's and that he took the rap because he didn't want Jelly Roll (who had been convicted of similar charges previously) to go to the penitentiary. He admits, however, that he knew the liquor was there and that Jelly Roll had been bootlegging all the time he (Willie) was there. Though unlettered, Willie was a man of good repute and had not been in trouble prior to his arrest in April of 1960. Jelly Roll, joined originally as a party defendant in this action, is now deceased.

The question to be decided in this case is of first impression under our statutes, and precedents that might be considered as supporting the judgment are limited to various expressions to the effect that such laws are preventive rather than punitive in purpose and are to be strictly construed; or that forfeiture is a drastic remedy and extends only to what is reasonably necessary [3] to abate the nuisance. Schneider v. Commonwealth, 232 Ky. 199, 22 S.W.2d 587, 588 (1929); Bratcher v. Ashley, Ky., 243 S.W.2d 1011, 1014 (1951); Commonwealth v. Covington, 313 Ky. 458, 231 S.W.2d 67, 69 (1950); Froedge v. Commonwealth, 289 Ky. 168, 158 S.W.2d 426, 428 (1942); Barnes v. Commonwealth, 314 Ky. 558, 236 S.W.2d 454, 455 (1951); and Beavin v. Commonwealth, 308 Ky. 522, 215 S.W.2d

3. This is a physical restriction, pertaining to the amount of property. See Rickman v. Commonwealth, 204 Ky. 848, 265 S.W. 452, 609 (1924), and Froedge v. Commonwealth, 289 Ky. 168, 158 S.W.2d 426 (1942).

119, 121 (1948). Though mindful of these fundamentals, we do not find them dispositive in this instance.

KRS 242.310, which provides that property used or permitted to be used in violation of the chapter shall be forfeited, is rooted in the Acts of 1920, c. 81 § 8.[4] Sections 9 to 14 [5] of that act authorized a hybrid action "to forfeit such property and to perpetually enjoin the said nuisance" [6] and, in § 12,[7] directed that an order of abatement be entered as part of the judgment. Apparently, however, the latter section limited the forfeiture to fixtures and movable property, which explains the combination of both forfeiture and abatement in the same proceeding. The 1920 act was superseded by c. 33, Acts of 1922, the Rash-Gullion or "Bone Dry" Act, and this legislation made no provision whatever for injunction or abatement. With minor exceptions, the forfeiture provisions that now appear as KRS 242.310 to 330, inclusive, were contained in § 13 of the Rash-Gullion Act,[8] and there was no statutory injunctive, abatement or "padlocking" procedure until the present local option law was enacted by c. 1, Acts of 1936.

All of the statutes with which we are here concerned, KRS 242.310 to 350, inclusive, were embraced in two separate sections of the local option law, Acts of 1936, c. 1. The forfeiture provisions, brought forward substantially intact from the 1922 act, are § 24 of the 1936 act,[9] now KRS 242.310 to 330, inclusive. The injunctive and abatement provisions, now KRS 242.340 and 350, were newly introduced as § 25 of the 1936 act.

The majority of us are convinced that these two sections of the 1936 act were intended to provide separate remedies. We know it may be harsh to enforce a forfeiture when the less severe remedy of abatement and padlocking is available. Nevertheless, it is our opinion that the legislature intended the person bringing the suit to have that option. The forfeiture procedure had long existed in the "bone dry" prohibition era and was simply carried into the local option law, at which time injunction and abatement were introduced additionally and separately. It would have been a simple matter for the legislature to vest in the chancellor the discretion of choosing between the two types of relief, or of adjudging some combination of the two, had it so desired. It is, we believe, a significant circumstance that a private citizen who brings a successful forfeiture action is entitled to a 10% fee.[10] If the chancellor had the discretion to deny a forfeiture and padlock the premises instead, the intended incentive for bringing such an action would be greatly reduced if not destroyed.

The principle that forfeiture is designed to be preventive rather than punitive does not mean that in every forfeiture suit the court is to determine whether such a remedy is necessary in order to prevent a continuation or recurrence of that particular nuisance. By its very severity a forfeiture serves not only to end one nuisance at one place but, by example, to prevent others at other places. We feel impelled to respect the legislative intent by preserving the integrity of this remedy.

The cause is reversed with directions that a judgment be entered consistent with this opinion.

MILLIKEN, C. J., and MOREMEN and STEWART, JJ., dissent.

4. Carroll's Ky.Statutes (1922), § 2554a–8.

5. Id., §§ 2554a–9 to 14.

6. Id., § 2554a–9.

7. Id., § 2554a–12, which called for a sale of the chattels and closing of the premises for one year unless sooner released.

8. Carroll's Ky.Statutes (1930), § 2554a–13.

9. Which provided that the property "shall become" forfeited, whereas both the 1922 act and the KRS version now in force, KRS 242.310, use the expression "shall be."

10. KRS 242.330(4).