**BRATCHER et al. v. ASHLEY et al.**

Court of Appeals of Kentucky.
Nov. 30, 1951.

Otto C. Martin, Commonwealth's Atty., Hartford, Rhodes Bratcher, Morgantown. for appellants.

W. A. Moore, Morgantown, for appellees.

CAMMACK, Chief Justice.

On February 23, 1950, Rossie D. Ashley was arrested by the sheriff of Butler County and charged with unlawfully having, for the purpose of sale, intoxicating liquor in his possession in local option territory. This liquor was found in Ashley's automobile. On February 24 Ashley pleaded guilty to two charges of this offense and received on each charge a fine of $100 and a sentence of thirty days in jail. The fines were paid and the concurrent sentences served without an appeal.

On March 23, 1950, the appellants, the county attorney of Butler County and the Commonwealth's attorney of the 38th judicial district, suing in the name of the Commonwealth under the terms of KRS 242.320(1), instituted an action against Ashley in the Butler Circuit Court to have the automobile forfeited to the Commonwealth. The Universal C. I. T. Credit Corporation (hereinafter spoken of as the Credit Corporation) intervened in the action, alleging that it was the assignee of a conditional sales contract under which the automobile had been sold to Ashley and that there remained an unpaid balance of the purchase price. The Credit Corporation prayed that it be awarded title to and possession of the automobile under the terms of the contract, or be adjudged the holder of a purchase money lien superior to that of the Commonwealth; and if the latter, that the balance due be paid to it from the proceeds of the forfeiture sale.

The appellants filed an answer to the intervening petition in which they alleged they had no actual notice of this contract. They asserted further that it had not been recorded properly, hence neither the appellants nor the Commonwealth had notice of the lien, and therefore the intervenors were not entitled to share in the proceeds of the forfeiture sale. The Credit Corporation filed a reply denying the allegations of the appellants' answer. The chancellor

ordered that the automobile be sold and adjudged that the Credit Corporation had a prior lien which, under KRS 242.330(2), should be satisfied from the proceeds of the sale. From this judgment the appeal is prosecuted.

The stipulated facts show that Ashley had at all times pertinent to this case lived at his mother's home in Butler County, within one-half mile of the Butler-Grayson County line. On September 28, 1949, Ashley purchased an automobile, the subject of this controversy, from the Summers-Hermann Company of Louisville, entering into a conditional sales contract as security for the unpaid balance of the purchase price. On the face of the contract Ashley's address was listed as Caneyville, Kentucky. Mail is delivered to Ashley's home by an R.F.D. carrier operating out of the post office in Caneyville, a town in Grayson County. The contract was assigned by the Summers-Hermann Company to the Credit Corporation, which, apparently relying on the address shown on the contract, had it recorded in the office of the county clerk of Grayson County on October 25, 1949.

KRS 242.330 provides in part:

"(1) Upon a judgment of forfeiture under KRS 242.320, the court shall direct the sheriff to sell the property. * * *

"(2) The sheriff shall pay first out of the purchase money any valid recorded liens on the property so sold. The court may in its discretion order a sale subject to the liens.

"(3) No lien on any property so sold shall be paid unless it is recorded prior to the committing of the nuisance and unless the lienor can establish he had no knowledge of the nuisance."

It is now the contention of the appellants that the words "valid recorded liens", as used in subsection (2) above, made it incumbent upon the Credit Corporation to record the conditional sales contract in Butler County, the residence of the purchaser, as provided in KRS 382.670, and that the failure to so record rendered the lien of the Credit Corporation ineffectual against the claim of the Commonwealth as Ashley's attaching creditor without actual notice under KRS 382.270. This latter section provides: "No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal property shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors until such deed or mortgage is acknowledged or proved according to law and lodged for record. As used in this section 'creditors' includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

The words "valid recorded liens", as used in KRS 242.330(2), do not alone, where the Commonwealth is not a creditor and no other claims to the property have been made, require that a creditor asserting a lien shall, if he is to share in the proceeds of the forfeiture sale, have recorded the lien in strict compliance with the statute designating the proper county of recordation. It is the policy of this and other courts to construe forfeiture statutes strictly against a forfeiture and liberally in favor of the person whose property rights are to be affected. 37 C.J.S., Forfeitures, § 4, page 8. This was done in Froedge v. Commonwealth, 289 Ky. 168, 158 S.W.2d 426, and Rickman v. Commonwealth, 204 Ky. 848, 265 S.W. 452. A reading of KRS 242.310 to 242.330 inclusive, and particularly KRS 242.330(2) and (3), manifests that it was the intention of the Legislature to protect the interests of innocent parties in the property to be forfeited and sold. KRS 242.310 was not intended by itself alone to place the Commonwealth in a better position than, or give it a right superior to, an innocent creditor who unquestionably held an interest in the property prior to the arrest of the wrongdoer. The requirement that the lien be recorded, and that this be done prior to the violation of KRS 242.310, was not necessarily intended to give notice to the Commonwealth in the proper county that there exists an outstanding equitable interest in the property,

but was primarily intended to insure against the falsification or fabrication of claims to the property and to establish the order in which bona fide liens are to be satisfied from the proceeds of the sale.

It should be remembered that the validity of an instrument or a lien, as between the parties to the instrument, does not depend upon its proper recordation. Middendorf v. Goodale, 202 Ky. 118, 259 S.W. 59; Howard v. Kelsay, 230 Ky. 61, 18 S.W.2d 884; Sprowles v. Eversole, 307 Ky. 191, 210 S.W.2d 346. It is only where the rights of innocent purchasers or creditors, within the meaning of KRS 382.270, are involved that recordation becomes a factor. Here the Commonwealth is the only complainant of the failure to record in compliance with KRS 382.670. Therefore we must determine whether the Commonwealth is in this instance a creditor.

The appellants cite KRS 242.360, which authorizes a peace officer who discovers anyone illegally possessing or transporting alcoholic beverages in a vehicle in dry territory to seize the vehicle and arrest the person in charge of it. Upon conviction of the person so arrested, the court is authorized to order the vehicle sold (with certain exceptions not pertinent here) and the proceeds paid to the Commonwealth after payment of costs and satisfaction of all valid recorded liens on the vehicle. The appellants contend that this right to have seized the automobile when Ashley was arrested and subsequently to have it sold upon conviction vests in the Commonwealth an equitable interest in the automobile which could not be defeated by the improperly recorded lien of the Credit Corporation. This contention is made despite the fact that the right of seizure was not exercised by the sheriff, and the additional fact that the procedure here appealed from was instituted under KRS 242.320, which authorizes an action to have forfeited property which has been declared a nuisance by KRS 242.310. They also contend that the right to sell the car under KRS 242.310 to KRS 242.330 inclusive vests in the Commonwealth such an equitable interest in the property.

We do not agree with these contentions. Continuing with the aforementioned policy of giving a strict construction to forfeiture statutes, we reach the conclusion that the primary purpose of either KRS 242.310 or KRS 242.360 is not to vest in the Commonwealth an equitable interest in the property or the proceeds of its sale, but is to prevent further unlawful use of the property by depriving the guilty party of additional opportunity to so misuse it. See Schneider v. Commonwealth, 232 Ky. 199, 22 S.W.2d 587, and Clark v. Commonwealth, 204 Ky. 740, 265 S.W. 280. This purpose is fulfilled when the forfeiture sale is concluded and the Commonwealth, having expended no money, suffers neither injury nor loss of its rights when the proceeds of the sale are paid to an innocent party in satisfaction of that party's interest in the property. Whatever the interest vested in the Commonwealth by these statutes, it is not equal to or superior to that held by an innocent creditor whose interest in the property existed prior to the violation of KRS 242.310, nor is it such as would qualify the Commonwealth as a creditor within the meaning of KRS 382.270, and thereby render an unrecorded or improperly recorded lien invalid against the Commonwealth. To reach the opposite conclusion would be inconsistent with our interpretation of the forfeiture statutes, KRS 242.310 to 242.330 inclusive, because the Commonwealth, though not placed by the Legislature in a position superior to that of a prior creditor, could attain for itself such a position by claiming to be a creditor by reason of an unexercised right of seizure or by a right of sale upon conviction.

The appellants alleged, as grounds for a general attachment of the automobile, that Ashley was preparing to dispose of or conceal it to prevent its forfeiture. The Commonwealth had no claim against Ashley, other than the forfeiture action, on which to base an attachment. The order of attachment was issued by the clerk and the automobile was seized by the sheriff. Later, on motion of the intervening Credit Corporation, the attachment was quashed on technical grounds. The ap-

pellants contend that this was erroneous and that the attachment had established a lien on the automobile which could not be defeated by the improperly recorded lien of the Credit Corporation. It is not necessary that we discuss the propriety of the order quashing the attachment for, assuming it to be erroneous and the attachment lien valid, the Commonwealth's lien would not be entitled to priority over that of the Credit Corporation. It should be noted that a forfeiture proceeding is a special one existing only by act of the Legislature. We do not hold that the Commonwealth could not on a different state of facts obtain the rights attendant to a valid attachment lien by procuring, in connection with forfeiture proceedings, a general order of attachment against the property to be forfeited. However, where, as here, the Commonwealth is not a creditor of the wrongdoer and there are present no other factors conferring on it a right to procure an attachment lien, the Commonwealth can not make use of general attachment proceedings to acquire an interest in the property superior to that given it by the forfeiture statutes. To allow it to do so would circumvent the legislative intent expressed in these statutes. Under the circumstances present in this case an attachment obtained by the Commonwealth amounts to nothing more than a means of protecting the property, or preventing its sale to a bona fide purchaser while the forfeiture action is pending. As was pointed out above, the Commonwealth does not under the statutes alone occupy here a position superior to that of the Credit Corporation. Therefore, this attachment, even if valid, has no effect on the right of the Credit Corporation to have its lien satisfied from the proceeds of the sale.

It was stipulated that the Credit Corporation was entirely innocent of and had no knowledge of the wrongful use of the automobile. It had in good faith attempted to record properly the conditional sales contract, but had chosen the wrong county in which to record. It holds a lien, valid as between the parties to the contract, which was put to record, albeit improperly. This, though insufficient to be effectual against innocent purchasers or creditors included within the meaning of KRS 382.270, was nevertheless sufficient to satisfy the purpose of the requirement of KRS 242.330(2) that the lien be valid and be recorded.

For the reasons indicated above, the judgment is affirmed.