**MAR WIN DEVELOPMENT COMPANY,**
a Corporation, Plaintiff and
Respondent,

v.

Glenn L. WILSON, R. C. Wiper, and John D.
Coughlin, and all other persons unknown,
claiming any estate or interest in or lien or
encumbrance upon the property described
in the complaint, Defendants and Appel-
lants.

No. 7878.

Supreme Court of North Dakota.

July 13, 1960.

Rehearing Denied Aug. 5, 1960.

Palda, Palda, Peterson & Anderson, Minot, for plaintiff and respondent.

Bosard, McCutcheon & Coyne, Minot, for defendants and appellants.

STRUTZ, Judge.

This action was brought by the respondents to quiet title to a leasehold created by an oil and gas lease dated May 5, 1949, executed by Carrie Bratsberg as lessor to Arthur M. Cook as lessee, which lease covered eighty acres of land in Burke County, North Dakota, described as the South Half of the Southwest Quarter (S½SW¼) of Section 6, Township 163 North, Range 91 West, together with other lands. This action, however, involves only the eighty-acre tract and a lien claimed on the west half of that tract by the defendants and appellants, which lien had been filed against such tract for the drilling of an oil well. The lease was recorded in the office of the register of deeds of Burke County on November 2, 1949.

On December 17, 1957, Arthur M. Cook assigned to the Petroleum Corporation of America, referred to in this case as P.C.A., three leases, one of which was the Bratsberg lease. The assignment of the Bratsberg lease never was recorded, but was deposited in escrow with the two other leases in the United States National Bank of Denver, Colorado, accompanied by an escrow memorandum executed by Cook. The memorandum contained the requirements for release of the assignments from escrow. One of these requirements was a provision that the Petroleum Corporation of America was to pay to Arthur M. Cook the sum of $70,200, in the following manner: $25,000 on or before January 15, 1958; $25,000 on or before February 15, 1958; and $20,200 on or before March 15, 1958. The memorandum contained the further requirement that P.C.A. was "to commence the drilling of an oil and/or gas well" on the land described in the Bratsberg lease on or before March 10, 1958. The bank was instructed "to release the assignments to the Petroleum Corporation at such time as the sum of $70,200 has been paid in full and proof has been submitted that a well has been commenced on the above described location."

The assignments reserved to Cook an overriding royalty of fifteen per cent of the oil and gas produced.

P.C.A. made the first payment of $25,000 as required by the agreement. It also procured the services of Newcastle Drilling Company to drill a well. Drilling was commenced prior to March 10, 1958, in accordance with the requirement of the escrow memorandum. The last two cash payments, however, never were made, although Cook granted to P.C.A. an extension of time on the second payment until June 1, 1958. Shortly after that date, the escrow agreement was terminated and the Bratsberg lease assignment was returned to Cook. On June 30, 1958, P.C.A. executed a quitclaim deed to Arthur M. Cook covering the eighty-acre tract together with other land. Thus it appears that in June 1958 Cook obtained a return of the assignment that he had deposited in escrow and obtained a quitclaim deed for the land covered by the Bratsberg lease. Cook's next step was to execute an assignment of the Bratsberg lease to the plaintiff in this action, Mar Win Development Company.

Meanwhile, on March 19, 1958, Newcastle Drilling Company, having completed drilling the well for P.C.A., filed a lien under the provisions of Chapter 35–24 of the 1957 Supplement to the North Dakota Revised Code of 1943, in which, according to entry No. 33 of the abstract of title, which is the only evidence of the lien in this record, it

"Claims a lien upon the oil and gas mining leasehold estate and interest therein of the Petroleum Corporation of America, upon the SW¼SW¼ Sec. 6, Twp. 163 North, Range 91 West, and other lands."

The lien filed by Newcastle Drilling Company purports to cover the west forty acres of the eighty-acre tract described in the Bratsberg lease.

Entry 22 of the abstract of title shows a sheriff's certificate of sale on foreclosure of lien which was recorded in the office of the register of deeds on August 7, 1958. This certificate recites that the sheriff of Burke County, by virtue of a judgment and decree of foreclosure dated July 7, 1958, in favor of Newcastle Drilling Company and against Petroleum Corporation of America, and by virtue of a writ of special execution, on the 5th day of August 1958, at two o'clock p. m., did sell property described in the lien and in the judgment and writ of special execution. The certificate then states:

"I then offered for sale the interest of Petroleum Corporation of America in the leasehold for oil and gas purposes of the following described real' property, to-wit: The Southwest Quarter of the Southwest Quarter (SW¼SW¼) of Section 6, Township 163 North, Range 91 West in Burke County, North Dakota; and Glenn L. Wilson offered and bid therefor the sum of $9,000.00."

The sheriff then certified that the bidders for the respective items were entitled to deeds at the end of one year if such property was not redeemed.

Cook admitted receiving the first payment of $25,000 and testified that, prior to March 10, 1958, the well was "commenced, drilled, and abandoned." He also testified, with respect to the extension of additional time to P.C.A. for making the second payment of $25,000, as follows:

"Well, even the first payment wasn't paid on time and the thing was booted around with promises. February 15th the thing was killed, they called and said they would start the well and pay us all the balance due us before the well was finished. We said go ahead and start the well; that was the original intent to get the well drilled."

Thus P.C.A. had made a substantial payment and had taken possession of the leasehold when its agent, Newcastle Drilling Company, moved onto the land and started drilling as contemplated.

The appellants contend that, under Chapter 35–24 of the 1957 Supplement to the

North Dakota Revised Code of 1943, and under the facts in this action, the lien of Newcastle Drilling Company, which is the basis of the appellants' claim, attached to the whole leasehold and not merely to the interest of Petroleum Corporation of America in the leasehold. They point to the fact that the plaintiff's assignor, Arthur M. Cook, required P.C.A. to drill an oil well on the property described in the Bratsberg lease; that Newcastle Drilling Company's lien, being of record at the time Cook executed an assignment of the Bratsberg lease to the plaintiff, Mar Win Development Company, resulted in Mar Win's taking the assignment subject to the lien. Appellants contend, therefore, that the lien was a lien on not only P.C.A.'s interest in the Bratsberg lease but upon the entire leasehold, including Cook's interest therein, and that the appellants, by purchase of the sheriff's certificate, acquired an interest which was superior to the interest of Mar Win, which acquired its interest by assignment from Cook after the filing of the lien.

■ We do not believe it is necessary here for this court to determine what interests could have been covered by the lien under the law of North Dakota and the facts in this case. A statutory lien exists only where there has been a compliance with the statute. 53 C.J.S. Liens § 5, p. 847.

■ Whether the lien of Newcastle Drilling Company could have covered interests greater than the interest of P.C.A. therefore is not important, since the lien itself purports to be a lien on the interest of P.C.A. only. Whether, under the law and the facts, such lien might have been on the whole leasehold or on some interest in the leasehold in addition to whatever interest P.C.A. had, is not before us for the reason that the lien itself purports to be a lien on P.C.A.'s interest only, whatever that may have been. The appellants make much of the fact that Mar Win knew of Newcastle's lien and judgment, and, in sup-

port of their contention, cite the following from the testimony of Mr. Marshall of Mar Win Development Company:

"Q. Mr. Marshall, when Mar Win purchased the Bratsberg lease from Mr. Cook were you aware of the Newcastle Drilling Company and Newcastle judgment against Petroleum Corporation? A. I was aware of a lien."

But what did Newcastle claim in its lien which Mar Win was aware of, or what was Newcastle's claim of which Mar Win had notice?

Entry No. 33 of the abstract, the only evidence of the lien before this court, states that Newcastle Drilling Company

"Claims a lien upon the oil and gas mining leasehold estate and interest therein of the Petroleum Corporation of America, upon the SW¼SW¼ Sec. 6, Twp. 163 North, Range 91 West, * * *"

No lien was claimed on any interest in the leasehold other than whatever interest P.C.A. might have in it at the time of filing of the lien. The sheriff's certificate states that, on execution sale, the sheriff

"offered for sale the interest of Petroleum Corporation of America in the leasehold for oil and gas purposes of the following described real property, to-wit: The Southwest Quarter of the Southwest Quarter (SW¼SW¼) of Section 6, Township 163 North, Range 91 West in Burke County, North Dakota; * * *"

Thus all that the defendant Wilson purchased was the interest of P.C.A. in the Bratsberg lease. We do not pass on what Newcastle Drilling Company's lien might have covered, but inquire only as to what interest P.C.A. had in the leasehold at the time of filing of the lien, since the lien, by its specific provision, is limited to P.C.A.'s interest in the leasehold. Though the plaintiff and respondent was aware of New-

castle Drilling Company's lien and judgment, such lien, by its specific provision, was only on any interest P.C.A. had in the leasehold and did not purport to cover any other or greater interest.

. What was the interest of P.C.A. on April 19, 1958, at the time when the lien of Newcastle Drilling Company was filed? Mr. Cook was the owner of the legal title, while P.C.A. was the owner of an equitable interest. Cook had assigned the lease in question to P.C.A. by depositing the assignment in escrow in the United States National Bank of Denver, Colorado, accompanied by an escrow memorandum. · The requirements for release of this assignment from escrow, to wit, the payment of $70,200, never were complied with and so the escrow agent never did release the assignment to P.C.A., although an extension of time for making payment was granted by Cook. Shortly after such extension had expired, the escrow agent returned the assignment to Cook. At the time of filing of the lien by Newcastle Drilling Company, P.C.A. had only an equitable interest in the lease in question.

■ This court has held that an oil and gas lease conveys an interest in real property. Ulrich v. Amerada Petroleum Corporation, N.D., 66 N.W.2d 397; Alfson v. Anderson, N.D., 78 N.W.2d 693. Therefore, if the assignment of the lease had been executed and delivered, it clearly would have vested an interest in real estate in the assignee or in P.C.A.

■ However, the grant, or transfer, takes effect, so as to vest the interest to be transferred, only upon delivery by the grantor. Section 47–0906 of the North Dakota Revised Code of . 1943 provides:

"A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor and is presumed to have been delivered at its date."

■ Since an oil and gas lease is a transfer of an interest in real estate, an assignment of such lease also is a transfer of an interest in real estate and would take effect only on its delivery.

Cook having deposited the assignment of the lease to P.C.A. in escrow and the escrow agreement providing that the transfer should become effective on compliance with the conditions of the escrow agreement, the transfer, or grant, to P.C.A. never became effective because the conditions never were complied with by P.C.A.

■ This court has held that no grant, or transfer, of an interest in real estate, deposited in escrow, becomes effective without compliance with the conditions of the escrow agreement, and that such deposit in escrow, without the subsequent compliance with the conditions of the escrow, passes no title. Thornhill v. Olson, 31 N.D. 81, 153 N.W. 442, L.R.A.1916A, 493.

■ After the time for compliance with such escrow terms had expired, the assignment to P.C.A., deposited with an escrow agent, could be withdrawn by Cook where such conditions of the escrow agreement had not been complied with. 30 C.J.S. Escrows § 9, p. 1208.

■ Thus P.C.A. acquired no title by the deposit of the assignment in escrow, and on its failing to comply with the conditions of the escrow agreement it forfeited any right to acquire title that it might have had. By forfeiture of the leasehold estate by P.C.A., the lien of Newcastle Drilling Company was good only on such materials, appurtenances, and fixtures which might be located on the premises to which the lien had attached prior to such forfeiture. Sec. 35–2405, 1957 Supp., N.D.R.C.1943. This section provides, in part:

" * * * If a lien provided for in this Act (chapter) attaches to an equitable interest or to a legal interest contingent upon the happening of a con-

dition subsequent, failure of such interest to ripen into legal title or such condition subsequent to be fulfilled, shall not impair any lien as to material, appurtenances and fixtures located thereon and to which said lien had attached prior to such failure."

This section covers a situation such as we have in this case. The lien of Newcastle Drilling Company specifically provided that it attached to the interest of P.C.A. The interest of P.C.A. was an equitable interest, or a legal interest contingent upon the happening of a condition subsequent, to wit, the payment of the sums due under the escrow agreement. Such interest did not ripen into legal title and such condition subsequent was not fulfilled. Therefore, under the above section, the lien still attached to materials, appurtenances, and fixtures located on the premises. However, all of the parties have testified that the only materials or fixtures on the premises are the pipes in the ground, and that it would cost more to retrieve those pipes than what they are worth. When Newcastle Drilling Company's lien was foreclosed, it attached to such pipes in the ground, and that is all that the appellant received by bidding at the foreclosure sale.

The judgment of the trial court is affirmed.

SATHRE, C. J., and MORRIS, BURKE. and TEIGEN, JJ., concur.