218 So.2d 793 (1969)
PALM SPRINGS GENERAL HOSPITAL, INC., OF HIALEAH, a Florida Corporation, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; Eutimio Leal and Georgina Leal, Appellees.
No. 67-913.
District Court of Appeal of Florida. Third District.
January 28, 1969.
Rehearing Denied February 26, 1969.
*795 Wicker, Smith, Pyszka, Blomqvist & Davant, Sinclair, Louis & Huttoe, Paul Siegel, Bertha Claire Lee and Faye L. Becker, Miami, for appellant.
Edward B. Johnson, Jr., and Jeanne Heyward, Miami, for Eutimio and Georgina Leal.
Walton, Lantaff, Schroeder, Carson & Wahl, and Richard J. Thornton, Miami, for State Farm Mut. Auto. Ins. Co.
Before BARKDULL, HENDRY and SWANN, JJ.
HENDRY, Judge.
The appellants were the plaintiffs below, and appeal from an adverse summary judgment entered against them. The portion of the complaint pertinent hereto claimed damages against the three appellees for their impairment of a hospital lien. The following facts appear uncontroverted from the record and form the basis for our holding.
An auto accident occurred on November 6, 1966, which involved the appellee Eutimio Leal and another individual, Joe Trollinger. Both were taken to the Palm Springs Hospital for medical care. Trollinger was insured by the appellee, State Farm Mutual Automobile Insurance Co. (hereinafter State Farm), and their agent was apprised of the accident within hours of its occurrence. Soon thereafter, Leal secured the services of an attorney, who began preparations to recover money for the damages which arose from the accident. This attorney notified State Farm of Leal's claim against their insured, Trollinger, by a letter dated November 17, 1966. The insurance policy had a $10,000 liability coverage. On about November 26, 1966, the hospital comptroller communicated by phone with Leal's attorney, requesting a "letter of guarantee" in order to ascertain the financial position of Leal with regard to the mounting costs of his hospitalization. The comptroller was assured by the attorney that "* * * there was nothing to worry about. Mr. Trollinger had public liability with an insurance company and [the hospital] bill would be paid in full and [the attorney] had a strong case."[1]
Meanwhile, Leal's attorney and State Farm continued their negotiations, and at the request of the insurance company Claims Division, the attorney sent them hospital bills amounting to $4,661.65, (dated up to December 8, 1966) plus a copy of the doctor's report.
After a conference held on December 21, 1966, Leal's attorney and several State Farm agents, including the Division Claims Superintendent, came to a tentative agreement to settle Leal's claim for $9,000.00.[2] *796 Immediately thereafter, the attorney and a State Farm agent both drove to the hospital in order to have Leal execute the release papers. This was done, and a $9,000.00 draft was issued from State Farm payable to Leal and his attorney. The record in no way reflects that at this time the hospital had any knowledge or notice that a settlement had been completed.
By January 11, 1967, Leal's hospital costs had increased to over $7,000.00. The comptroller phoned Leal's attorney to inquire as to Leal's ability to pay the bill. It was at this time, or very shortly thereafter, that the hospital learned of the settlement.
Leal was transferred to another hospital on January 15, 1967, and for purposes of this appeal, we need not comment as to any of the circumstances surrounding the move. [See Leal v. Palm Springs General Hospital, Inc., of Hialeah et al., 218 So.2d 800. (Third District Court of Appeals)] The first confrontation between the hospital's counsel and Leal's attorney occurred about January 20, 1967, and it was then that the hospital counsel expressed concern over the effects of the previous circumstances on the statutory lien provided for hospitals in General Laws of Florida, 1951, Ch. 27032, infra. On January 24, the hospital filed its Claim of Lien in the circuit court, which was duly recorded. On the next day, January 25, copies of said lien were mailed to Trollinger and State Farm. The trial court held that the lien did not attach and was never perfected, and therefore, that the hospital had no claim or interest in the settlement proceeds disbursed before the filing of the lien. Moreover, the court further held that notwithstanding State Farm's knowledge that a lien could be filed, the settlement which occurred before such filing did not constitute an impairment of said lien.
Now we must focus our attention on the provisions of the Hospital Lien Act, supra. The pertinent provisions of this statute read as follows:
"SECTION 1. Every individual, partnership, firm, association, corporation, institution and governmental unit, and every combination of any of the foregoing, operating a hospital in any county in this State having a population in excess of 325,000,[3] according to the last preceding Federal Census, shall be entitled to a lien for all reasonable charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims and demands accruing to the persons to whom such care, treatment or maintenance are furnished, or accruing to the legal representatives of such persons, and upon all judgments, settlements and settlement agreements rendered or entered into by virtue thereof on account of illness or injuries giving rise to such causes of action, suits, claims, counterclaims, demands, judgment, settlement or settlement agreement and which necessitated or shall have necessitated such hospital care, treatment and maintenance.
"SECTION 2. In order to perfect such lien, the executive officer or agent of a hospital, before, or within ten days after, any such person shall have been discharged from such hospital, shall file in the office of the clerk of the circuit court of the county in which such hospital shall be located, a verified claim in writing setting forth the name and address of such patient, as it shall appear on the records of such hospital, the name and location of such hospital, and the name and address of the executive officer or agent of such hospital, the dates of admission to and discharge of such patient therefrom, the amount claimed to be due for such hospital care, treatment and maintenance, and, to the best knowledge of the person signing such claim, the names and addresses of all persons, firms *797 or corporations claimed by such ill or injured person or by the legal representative of such person, to be liable on account of such illness or injuries; such claimant shall also, within one day after the filing of such claim or lien, mail a copy thereof by registered mail, postage prepaid, to each person, firm or corporation so claimed to be liable on account of such illness or injuries, at the address so given in such statement. The filing of such claim shall be notice thereof to all persons, firms or corporations who may be liable on account of such illness or injuries, whether or not they are named in such claim or lien, and whether or not a copy of such claim shall have been received by them.
"SECTION 3. The clerk of the circuit court shall endorse on such claim the date and hour of filing, shall provide a hospital lien book with proper index in which he shall record such claim, and shall show therein the date and hour of such filing. He shall be paid by the claimant as his fee for such filing and recording of each claim the sum of $1.25.
"SECTION 4. No release or satisfaction of any action, suit, claim, counterclaim, demand, judgment, settlement or settlement agreement, or of any of them, shall be valid or effectual as against such lien unless such lienholder shall join therein or execute a release of such lien.
"Any acceptance of a release or satisfaction of any such cause of action, suit, claim, counterclaim, demand or judgment and any settlement of any of the foregoing in the absence of a release or satisfaction of the lien referred to in this Act shall prima facie constitute an impairment of such lien, and the lienholder shall be entitled to an action at law for damages on account of such impairment, and in such action may recover from the one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment and maintenance. Satisfaction of any judgment rendered in favor of the lienholder in any such action shall operate as a satisfaction of the lien. Any action by the lienholder shall be brought in the court having jurisdiction of the amount of the lienholder's claim and may be brought and maintained in the county wherein the lienholder has his, its or their residence or place of business. If the lienholder shall prevail in such action, the lienholder shall be entitled to recover from the defendant, in addition to costs otherwise allowed by law, all reasonable attorney's fees and expenses incident to the matter."
The above statutory provisions and the facts of the instant case have raised this question of law: What measures must a hospital take in order to cause the statutory lien to attach to "* * * all persons, firms or corporations claimed by such ill or injured person * * * to be liable on account of such illness or injuries * * *"?
State Farm, the appellee, contends that since its settlement with the claimant was made before the lien was filed, the lien never attached and no impairment of such lien could have occurred until the provisions of § 2, supra, were completed. The appellant maintains that the statutory intent of this general law is such that the lien attaches from the moment the hospital renders service to a claimant, and is subject to being perfected in accordance with the procedures set forth in § 2. We recognize that this is the first judicial review of the Florida Hospital Lien Act, and must, as an initial step, point out several guidelines which we are bound to follow in the area of statutory construction.
First, a court when construing a statute has as its principal duty to give effect to the legislative intent and purpose. Dade Federal Savings & Loan Ass'n v. Miami Title & Abstract, Fla.App. 1969, 217 So.2d 873 (3rd Dist. Court of Appeals 1969); 30 Fla.Jur. Statutes §§ 72-115. The logical interpretation of the legislative intent as to Ch. 27032 is to assure a hospital of its rights to proceeds which are held by *798 an insurance company whose insured is liable for the injuries suffered by the hospital's patient. No lien is necessary against the injured patient as the usual channels of legal recourse are available against a solvent patient indebted to the hospital for services. The problem to which the Legislature addressed itself arises for the hospital when it is confronted with an insolvent patient whose treatment results in a mounting bill for expenses. Thus, we observe that a desirable consequence is affected by Ch. 27032 as to such an insolvent patient entitled to insurance proceeds; i.e., by affording the hospital a lien on the insurance proceeds, the Legislature has provided such hospital with an assurance that it will be compensated by an injured indigent, and that the hospital should have no reluctance about providing further services in view of potential anticipated costs.
The major argument in this case occurs because of the words "* * * shall be entitled to * * *" as used in Section 1 of the Act. In view of the fact that a hospital "shall be entitled to" a lien under proper circumstances, the issue is to determine when the hospital becomes so entitled.
The word "shall" is generally read as having a mandatory connotation although in certain instances a permissive meaning can attach. 30 Fla.Jur. Statutes § 8, and cases therein. The weight of authority in this area, however, is that the courts must assume that the Legislature knows that the word "may", when given its ordinary meaning, denotes a permissive term and is reserved for such connotation rather than the word "shall". Brooks v. Anastasia Mosquito Control District, Fla. App. 1963, 148 So.2d 64. In any event, the crucial test is how an interpretation of the words "shall be entitled", would affect the result of the statute. If, arguendo, we were to read that part of the statute as being permissive only, requiring the hospital to comply with § 2 before it could have an interest in or claim upon the insurance proceeds involved, any protection that the hospital hoped to gain from the statute would be made nugatory if the settlement occurred before the lien was filed as per § 2. Thus, a hospital would find itself filing numerous liens as to any indigent patient anticipating insurance proceeds, each such lien being necessary because § 2 requires that "the amount claimed to be due" be stated in particular. Since that amount changes from day to day, the hospital would have to make timely amendments as the bill grew larger. This is an absurd result, of course, and one which we do not think the Legislature intended. A cardinal maxim of statutory construction is that no literal interpretation should be given a statute which leads to an unreasonable or ridiculous conclusion, or a result obviously not designed by the legislators. State v. Sullivan, Fla. 1928, 95 Fla. 191, 116 So. 255; State ex rel. Fla. Industrial Comm. v. Willis, Fla.App. 1960, 124 So.2d 48.
On the other hand, § 2 also requires that "the dates of admission to and discharge of such patient" be entered on the lien, and a reasonable meaning derived from this obvious wording leads to the conclusion that the hospital need file but one lien, after final discharge of the patient when the total costs he has incurred have been determined, to protect its interest in the patient's anticipated insurance settlement. The provisions of any particular section of this statute must be construed together with the other provisions and effect is to be given to the statute as a whole. Forehand v. Brd. of Public Instruction, Fla.App. 1964, 166 So.2d 668, 672; Vocelle v. Knight Brothers Paper Co., Fla.App. 1960, 118 So.2d 664. Therefore, we hold that § 1 and § 2 of the statute be construed to mean that, (a) a lien in favor of the hospital attaches from the moment an injured person falling within the provisions of § 2 is admitted as a patient; and (b) the lien is perfected, i.e., the claim and interest of the hospital vests, upon compliance with § 2, but not before.
In addition to fulfilling the rules of statutory construction, this holding is also *799 consistent with analogous areas of the law in Florida. A similar statutory protection exists for the benefit of securing a priority of payment of the price or value of work performed or materials furnished in improving real property, as defined in the Mechanic's Lien Law, § 84 Fla. Stat.F.S.A. The mechanic's lien statute has been liberally construed to secured the beneficial interests and purposes thereof. See 22 Fla. Jur. Mechanic's Lien § 4.
Another useful analogy occurs in the area of the attorney's special, or charging lien. This has been defined as the right of an attorney to have the expenses and compensation due him for his services in a suit secured to him by an equitable lien upon the judgment, decree or award for his client. See 3 Fla.Jur. Attorneys at Law § 71. This lien is dependent upon the equitable right of an attorney to be paid his fees and disbursements out of the recovery which he has obtained, and the attorney is allowed to actively enforce such lien against his client's recovery (except when the recovery is real property). 3 Fla.Jur. Attorneys at Law § 8. This lien attaches the moment the client derives benefit from the attorney's services; it is not "perfected", but equitably enforced by subsequent legal action. The similarity between the interests being protected by the common law attorney's charging lien and the statutory hospital lien is striking; therefore, we are in accord with the appellant's position that the principle in the former case be applied to the statute.
The appellee has also challenged the constitutionality of Ch. 27032, contending that the statute is actually a special act, not a general law. The basis for appellee's argument is that since Ch. 27032 applies only to those counties having a population of a certain number, there must be a reasonable relationship between the purposes to be effected by the act and the classification by population. Dade County v. City of North Miami Beach, Fla. 1959, 109 So.2d 362; State ex rel. Limpus v. Newell, Fla. 1956, 85 So.2d 124. Continuing, the appellee next raises the effect of subsequent general statutes which amended the population limits used to classify those counties wherein Ch. 27032 was to be operative. These amendatory statutes are Chapters 61-558, 61-577, and 61-1468, General Laws of 1961, and Chapter 65-862, General Laws of 1965. The foregoing chapters act to remove counties from the operation of Ch. 27032 when such counties reach a population of 390,000, and restore its provisions when such counties reach 450,000.
We find it unnecessary to detail our reasoning here, but hereby hold that Ch. 27032 meets the test of constitutionality which requires a reasonable relationship between population and purpose of enactment. In the highly populated counties, the hospitals are far more wont to be administering care to the indigent accident victim and thus in greater need of a lien-type means of assuring payment from such persons.
We further hold that the amendatory statutes, supra, do not render Ch. 27032 unconstitutional. Identical amendatory statutes were passed in regard to the procedure for the summoning and empaneling of grand juries and the constitutional effect of such amendatory statutes was questioned in Yoo Kun Wha v. Kelly, Fla. 1963, 154 So.2d 161. In a thorough and well-reasoned opinion, the Supreme Court upheld the constitutionality of the main statute, applying the full gamut of constitutional principles as to the determination of validity of general laws, and the effects of subsequent amendments as to population classification. We find the case sub judice to be controlled by the same principles and adopt the rationale of Yoo Kun Wha here.
In conclusion, we hold that the summary judgment of the trial court be reversed. Appellant has raised as error the court's denial of its motion to amend; however, in view of the above holding, we find it unnecessary to rule on this aspect of the proceedings below.
Reversed.
NOTES
[1] The police report showed that the accident occurred as a result of Trollinger crossing the center line of the highway. He was charged with careless driving and driving while intoxicated.
[2] The record on appeal contains an interoffice memo addressed to the Division Claims Superintendent. This memo, in summarizing the pertinent factors to be considered with regard to determining the settlement limits, set forth the figures supplied by Leal's attorney as to hospital and doctors' bills.
[3] This population limitation has been subsequently amended, Chapters 61-558, 61-577, 61-1468, General Laws of 1961, and Chapter 65-862, General Laws of 1965.