**ROLLA COMMUNITY HOSPITAL, INC., a nonprofit corporation, Plaintiff,**

v.

**DUNSEITH COMMUNITY NURSING HOME, INC., a corporation; St. Paul Fire and Marine Insurance Co., a corporation, Defendants.**

**Civ. No. 10631.**

Supreme Court of North Dakota.

June 29, 1984.

Bruce E. Bohlman, Grand Forks, for plaintiff.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendants; argued by Gerald J. Haga, Grand Forks.

SAND, Justice.

The United States District Court, pursuant to Rule 47 of the North Dakota Rules of Appellate Procedure, certified the following question to this Court:

"Is a Chapter 35–18, North Dakota Century Code, hospital lien, which was filed approximately three and one-half years after the hospital provided services to a patient arising out of an alleged tort injury, valid and enforceable against the insurer of the alleged tortfeasor where the insurer, with actual notice of the filed lien, settled with the patient-claimant and disbursed the funds free of the purported lien?"

The stipulated facts are:

"1. Defendant St. Paul Fire and Marine Insurance Co. as the insurer of the City of Dunseith, d/b/a Dunseith Nursing Home, in the course of a lawsuit in state court grounded on a tort claim brought against the insured by Erma L. Haagenson, a former resident of the home, settled the claim on November 30, 1981, by the payment of $60,000.00 to the claimant and her attor-

ney. At the time of the payment to Erma L. Haagenson she was indebted to the Rolla Community Hospital, Inc. for medical services and supplies last provided to her on August 23, 1977, for injuries allegedly arising out of the tort. The balance for the said services and supplies remaining unpaid is $33,404.07. Plaintiff Rolla Community Hospital, Inc. demanded payment from Haagenson but she refused to pay, and the hospital filed a lien on March 16, 1981.

"2. On October 20, 1977, plaintiff Rolla Community Hospital, Inc. obtained a default judgment in Rolette County district court against Erma L. Haagenson for the claimed indebtedness in the amount of $33,-404.07. The default judgment was reopened and the case was brought to trial in January 1983. Defendant Erma L. Haagenson died on the first day of the trial. She was not present at the time, and was represented by her daughter, Neva Rainey. The trial was continued. The estate of Erma L. Haagenson was substituted as party defendant and the defendant made an offer of judgment in the amount of $33,404.00. Judgment was entered accordingly on behalf of Rolla Community Hospital, Inc. on May 4, 1983. A claim was filed against the Haagenson estate but was denied, presumably for lack of funds. No payment has been made on the judgment to date, and it does not appear that any payments will be made.

"3. In the interim Erma L. Haagenson on July 11, 1977, commenced a lawsuit against Dunseith Community Nursing Home, Inc. alleging that the negligence of Dunseith Community Nursing Home, Inc., a North Dakota nonprofit corporation, caused and made necessary the medical bills incurred from the services rendered her by the Rolla Community Hospital, Inc. On July 28, 1977, an answer was interposed on behalf of Dunseith Community Nursing Home, Inc. On October 29, 1981, Dunseith Community Nursing Home, Inc. amended its answer to the plaintiff's complaint alleging that it was not the party who had provided the lodging and services incident thereto to Erma L. Haagenson, and moved for summary judgment on those grounds, which appears to have been denied.

"4. On March 12, 1981, Rolla Community Hospital, Inc., for the first time, filed a notice of intention to file a hospital lien and served the notice on Dunseith Community Nursing Home, Inc., a North Dakota nonprofit corporation. A copy of the notice was also sent to Attorney Patrick J. Maddock, thought at that time to be representing Dunseith Community Nursing Home, Inc. in the lawsuit between Haagenson and Dunseith. On March 16, 1981, Rolla Community Hospital, Inc. filed a hospital lien statement and served it on Dunseith Community Nursing Home, Inc. A copy was mailed to Patrick J. Maddock. A copy was also served on Richard A. Ohlsen, attorney for Erma L. Haagenson.

"5. At no time was Patrick J. Maddock authorized to receive service of process, or act as agent for service of process, for either Dunseith Community Nursing Home, Inc. or for the City of Dunseith, d/b/a Dunseith Nursing Home. Maddock was employed as the attorney of record for the City of Dunseith, d/b/a Dunseith Nursing Home, through its insurer, the St. Paul Fire and Marine Insurance Company, but such representation was limited to defending against the negligence claim brought against the City by Erma L. Haagenson.

"6. The City of Dunseith has never been served with the notice of intention to file a hospital lien or the hospital lien statement.

"7. Some officials of Dunseith Community Nursing Home, Inc. were, at the material times, also officers of the City of Dunseith, and were serving in both capacities at the time they were served with the aforementioned notice and lien.

"8. On November 13, 1981, the Rolette County District Court ruled that plaintiff Erma L. Haagenson could join the City of Dunseith, d/b/a Dunseith Nursing Home, as an additional defendant, and that the question of whether the City of Dunseith, d/b/a Dunseith Nursing Home, or the Dunseith Community Nursing Home, Inc. was the entity responsible for the operation of

the nursing home during the time that Erma L. Haagenson was a resident could be determined by the jury. On December 4, 1981, while the trial was in progress and prior to the time the case was submitted to the jury, all of the parties, including Dunseith Community Nursing Home, Inc., entered into a stipulation where the case was settled by payment of $60,000.00 by St. Paul Fire and Marine Insurance Co., on behalf of the City of Dunseith d/b/a Dunseith Nursing Home. The payment was made to Erma L. Haagenson and her attorney on November 30, 1981. On January 27, 1982, on stipulation of counsel, the case was ordered dismissed by the presiding judge, and judgment of dismissal was entered on February 3, 1982. Erma L. Haagenson refused to use the proceeds to pay Rolla Community Hospital, Inc. all or any part of her indebtedness.

"9. Rolla Community Hospital was at all material times aware of the lawsuit brought by Erma L. Haagenson against Dunseith Community Nursing Home, Inc., and later that the City of Dunseith, d/b/a Dunseith Nursing Home, had been joined as a defendant in the case. Rolla Community Hospital, Inc. was aware at all material times of the scheduled date for trial and was aware of the trial when it was in progress. The knowledge of the Rolla Community Hospital, Inc. came to it through its counsel. Rolla Community Hospital, Inc. did not seek to intervene in the lawsuit but it did file the notice of intention and the hospital lien statement as hereinbefore set out.

*"Nature of the Controversy*

"Plaintiff Rolla Community Hospital, Inc. brought this action in district court, Rolette County, North Dakota, against Dunseith Community Nursing Home, Inc., a corporation, and St. Paul Fire and Marine Insurance Co., a corporation, on or about December 6, 1982. The relief requested is an accounting of the proceeds paid by St. Paul Fire and Marine Insurance Co. to Erma L. Haagenson, a declaration of the validity of the hospital lien filed pursuant to North Dakota Century Code chapter 35–

18, and for a foreclosure of the lien. The case was removed to the United States District Court on January 4, 1983, which on May 4, 1983, denied plaintiff's motion to remand. The court found, on the basis of evidence submitted to it by the parties, that at the time of Haagenson's injury the control and operation of the nursing home was with the City of Dunseith, d/b/a Dunseith Nursing Home, and not in the Dunseith Community Nursing Home, Inc. The court held that because the named defendant Dunseith Community Nursing Home, Inc., a corporation, was neither the tortfeasor, the insurer of a tortfeasor, or an injured party, there was no reasonable basis for predicting that liability might be imposed on Dunseith Community Nursing Home, Inc. under the North Dakota hospital lien law. For purposes of the removal statute, the joinder of Dunseith Community Nursing Home, Inc. as a defendant was deemed to be a fraudulent joinder and did not defeat diversity jurisdiction.

"Defendant St. Paul Fire and Marine Insurance Co. contends that the lien being a creature of statute, statutory requirements must be fairly complied with and that the failure of the plaintiff to file the lien within thirty days after providing the services as required by North Dakota Century Code, section 35–18–03, renders the lien invalid and void. St. Paul also contends the lien is invalid because the hospital did not serve the proper entity, their insured, with notice of intention to file the hospital lien. Plaintiff contends that the lien attached at the time of the furnishing of the services and that the insurer, with actual knowledge of the filed lien having paid the proceeds of the settlement to Haagenson without first satisfying the lien, is obligated to plaintiff for the amount of the lien.

"The parties agree that North Dakota law is controlling. It appears that a ruling by the Supreme Court on the question of law herein certified may be determinative of the cause pending before this certifying court, and it further appears there is no controlling precedent in the decisions of the Supreme Court of this state, relating to

North Dakota Century Code Chapter 35–18."

■ Case law in North Dakota as established in *Mar Win Development Company v. Wilson*, 104 N.W.2d 369, 372 (N.D.1960), states:

"A statutory lien exists only where there has been a compliance with the statute. 53 C.J.S. *Liens* § 5, p. 847."

Volume 53 C.J.S., Liens § 5, page 847, also states:

"A statutory lien is provided for not only where the statute expressly declares that under certain circumstances a person shall have a lien on a certain class of property for a debt or charge due, but also where it declares that a person shall have the right under given circumstances to hold certain property for, or subject to, the payment of a certain claim or charge, even though the word 'lien' is not used in the statute."

Also, the same authority, on page 848, states:

"A lien declared by positive statute is not dependent for its existence on subsequent acts which are requisite to its enforcement, although it has been held that, if no remedy is provided for the enforcement of the lien, it is worthless."

■ In *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68 (N.D.1981), and *Schaffer v. Smith*, 113 N.W.2d 668 (N.D.1962), this Court said that a mechanic's lien is purely a creature of statute and that the statutory requirements must be fairly met.

To resolve the question presented, including the contentions of the parties, we must examine, interpret, and construe the hospital lien provisions of NDCC Ch. 35–18, which were enacted by Senate Bill 75, Chapter 163, Session Laws of 1935.

■ The primary purpose of statutory construction is to ascertain and give effect to the legislative intent. *McCroskey v. Cass County*, 303 N.W.2d 330, 336 (N.D. 1981). The Legislature's intent in enacting a statute must first be sought from the language of the statute. *Ibid.*

■ Although the title of an act does not constitute a part of the act, it may be considered in determining legislative intent and objective. NDCC § 1–02–12; *cf. Northwestern Bell Telephone Company v. Hagen*, 234 N.W.2d 841, 847 (N.D.1975); *see also, First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857, 864 (N.D. 1974) (duty to harmonize statute with title, if possible). The title to the act by which Ch. 35–18 was enacted provides:

"An Act to provide for liens in favor of hospitals and other charitable institutions furnishing care, treatment and maintenance of persons injured in accidents, not subject to the provisions of the Workmen's Compensation Act of North Dakota, for the reasonable value of the service so rendered upon the rights of action, claims or demands of such injured persons, or judgments recovered thereon, against other persons, or corporations, liable in tort for damages, on account of negligence causing the injuries, and upon the proceeds of the settlements of any such claims or demands, and upon and against the insurer of such tort feasor or tort feasors; and upon insurance held by the injured person, and providing for constructive notice upon such insurers, tort feasors and their insurers, if any, by a filing of a lien statement with the Clerk of the District Court of the county in which such services are rendered." 1935 S.L. Ch. 163. [Underscoring ours.]

According to the title, the purpose of the Act is to provide for a lien in favor of a hospital or other charitable institution furnishing care, etc., to injured persons and to provide for constructive notice upon such insurers, tortfeasors and their insurers by filing the lien statement with the clerk of the district court.

Generally, a hospital in an emergency situation involving a person *requiring* medical treatment has very little recourse but to admit the person and render the necessary services.[1] This is obviously the

1. Generally, in non-emergency situations, upon admission information about insurance and

reason why the hospital lien was enacted by the Legislature.

Chapter 163 of the 1935 Session Laws was revised by the 1943 code revisers. The revision included a division of sections for clarity without change in meaning, according to the reviser's notes. Also, the phrase "and to any insurance or indemnity payable to the insured person by any insurer" was added to the final sentence in § 35–18–01 to conform with the other sections in the chapter.

Section 35–18–01 provides:

"A notice of intention to file a hospital lien shall be served upon the person or corporation claimed to be liable for the damages arising from the injury, by registered or certified mail or by personal service in the manner provided for the service of a summons in a civil action. Proof of such service shall be filed with the lien statement."

The defendants argued that the language "shall be entitled to a lien," as found in § 35–18–01, does not automatically give the hospital a lien but is conditioned or dependent upon complying with the statutory provisions relating to the filing of the lien within a certain time and place.

We have examined other provisions pertaining to various liens and we find that the language "shall be entitled to a lien" or "shall have a lien" is generally used. The term expressly provides for a lien upon satisfying the prerequisites. In this instance it is the furnishing of care and services.

Some of the statutory lien provisions specifically require the filing of a statement before the lien becomes valid. They are:

NDCC § 35–20–15 (unpaid earned property or casualty insurance premiums) (insurance agent "upon filing the statement provided for . . . has a lien");

NDCC § 35–07–01 (threshing lien) (owner of threshing machine "upon filing the statement prescribed . . . has a lien");

NDCC § 35–09–01 (fertilizer, chemical and seed lien) (person furnishing "upon filing the statement provided . . . shall have a lien");

NDCC § 35–20–02 (sugar beet production lien) (failure to file copy of contract constitutes waiver of lien);

NDCC § 35–11–02 (farm laborer's lien) (laborer "shall file" affidavit to obtain lien).

NDCC § 35–27–11 (mechanic's lien) specifically provides that no person shall be entitled to a lien unless he shall:

"1. Keep an itemized account thereof separate and apart from all other items of account against purchaser;

2. Serve a written notice by registered or certified mail upon the owner, subject to section 35–27–02, demanding payment of such account and notifying such owner if payment is not made within fifteen days of the date of mailing such notice a lien will be perfected according to law; and

3. Record with the register of deeds of the county in which the land, building, or improvement is situated a verified notice in writing signed by the person entitled to the mechanic's lien or by his authorized agent stating all of the following:

a. The name of the person in possession of the land.

b. The description of the property to be charged with the lien.

c. The date of the contract.

. . ."

In *Quality Builders v. Hahn*, 134 N.W.2d 577 (N.D.1965), this Court considered a similar provision in a mechanic's lien contained in NDCC § 35–12–04, which has now been replaced by § 35–27–11. The Court held that the failure of the material-

---

who will pay is obtained by the hospital. We are not implying that the admission and treatment of Erma Haagenson was on an emergency basis. Neither did any party contend that Erma

Haagenson was covered under workmen's compensation nor has any party contended that the required treatment was not the result of an injury.

man to make the statutory written demand for payment was fatal to his lien.

This Court also considered a similar provision in *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68 (N.D.1981). In *Spier*, NDCC § 35–27–02 at that time provided that:

"... No person shall have a lien for improving real estate resulting from extending credit ... unless such person first notifies the owner in writing of the provisions of Ch. 35–27 and obtains a copy of the contract by which the owner authorizes his agent ... to seek credit or make contracts in the owner's name, or by which the owner personally assumes responsibility for payment upon default by the owner's agent ...."

The Court held that those liens for goods delivered prior to 1 July 1979 were invalid because the statutory notice requirements of NDCC 35–27–02 prior to the amendment, as set out above, were not satisfied. But those liens for goods delivered after 1 July 1979, the effective date of the amended version removing the statutory notice requirement, were valid.

The defendant also argued that the term "shall be" is permissive. In a limited sense it is, because the hospital must first provide the medical care and services to be entitled to a lien. But otherwise the term "shall be entitled" is clear and specific. If the Legislature had intended that the lien was merely permissible and conditioned upon meeting certain filing requirements it could have simply provided for such conditions, as it did in NDCC § 35–27–11 and the other lien provisions set out earlier.

In *Palm Springs General Hospital v. State Farm Mutual Insurance Co.*, 218 So.2d 793 (Fla.Dist.Ct.App.1969), the court considered statutory language involving a hospital lien similar to ours. There, as in this case, the statute provided that a hospital "shall be entitled to" a lien. The court reasoned that if the term "shall" is construed as being permissive only and required a hospital to comply with the other provisions first, it would destroy the effect of the act because, under such a provision,

the insurer could settle with the insured before the thirty days or before the lien is filed and then escape liability. Certainly this is not what our Legislature had in mind. The Florida court held that a lien in favor of the hospital attaches from the moment an insured person is admitted as a patient and the lien is perfected upon compliance with certain provisions of the act, but not before.

In *Rogue Valley Memorial Hospital v. Salem Insurance Agency, Inc.*, 265 Or. 603, 510 P.2d 845 (1973), the Court held that the statutory requirement that a hospital lien may be filed within fifteen days after the patient is discharged was not a jurisdictional requirement and thus a judgment date on a hospital lien filed one day late was not void and was not subject to a collateral attack.

51 Am.Jur.2d *Liens* § 7, p. 149 states that lien statutes providing for the filing of liens and notices of liens are not technically applied so as to defeat just claims. *See also* Annot. 25 A.L.R.3d 858, 874 § 5[b] (Hospital Liens). 51 Am.Jur.2d *Liens* § 8, p. 149, also states:

"In the absence of a statute providing to the contrary, the validity of a lien as between the parties does not depend on its recordation...."

[citing *Richardson Tractor Co. v. Square Deal Machinery & Supply Co.*, 149 So.2d 388 (Fla.Dist.Ct.App.1963); *Bratcher v. Ashley*, 243 S.W.2d 1011 (Ky.Ct.App. 1951)].

The North Dakota recording and filing statutes are substantially the same as those in Florida and Kentucky and, as such, we adopt the rationale of those cases to the filing requirement in the instant case.

We have noted earlier that the filing requirement is for purposes of establishing constructive notice which is defined as "notice imputed by the law to a person not having actual notice." NDCC § 1–01–24; *Anderson v. City of Jamestown*, 50 N.D. 531, 196 N.W. 753 (N.D.1939). Further, "Every person who has actual notice of

circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." NDCC § 1–01–25. Actual notice is defined as "express information of a fact." NDCC § 1–01–23.

In *Gilbertson v. Charlson*, 301 N.W.2d 144 (N.D.1981), we considered a situation involving actual notice and a deed in which the grantors had reserved a 50% mineral interest. We held that where the grantees had actual notice of the existence of a 31⅔ % interest in the minerals to the grantees and constructive notice of a 5% reservation of the minerals in the State, the grantees were aware that the grantors were not warranting title to 50% of the minerals plus the 5% reservation by the State and the 31⅔% of the minerals then owned by the grantees. We concluded that under these circumstances there was no implied warranty that the grantors were warranting what they had reserved. *Gilbertson, supra* at 148. Thus, simple logic and the statutory definitions set out supra compel the legal conclusion that actual notice is superior to constructive notice. *See also, Magnuson v. Breher*, 69 N.D. 197, 284 N.W. 853, 855 (1939) (as between the parties and those who have notice, mortgage not affected by recordation); NDCC § 47–19–46 (unrecorded instrument valid as between parties and those who have notice).

■ The purpose of recording a lien is to give notice to all persons. 53 C.J.S. *Liens* § 6, p. 850. However, if actual notice has been accomplished or if the party or parties had or have actual notice the need for filing or recording in order to accomplish constructive notice is not necessary. See *Franklin Finance Company v. Strother Ford, Inc.*, 110 Ga.App. 365, 138 S.E.2d 679 (1964). The law does not require the performance of idle acts. NDCC § 31–11–05. "The object of the recording (filing) statutes is the constructive notice which is given to all the world as to the rights of the parties thereto. Actual notice to third parties, where it can be shown, is as effective as recordation." *Bank of Ringgold v. West Publishing Co.*, 61 Ga. App. 426, 6 S.E.2d 598, 599 (1939).

For purposes of illustration, let us assume the insurance company had actual knowledge of the insured person being hospitalized as the result of an injury or tort, and the insurance company settled with the patient before the thirty days expired or before the hospital filed a lien, but within the thirty days. Could the insurance company successfully contend that because no lien had yet been filed it was not obligated to respect the lien? We think such an argument would be specious and without any legal justification. This situation, nevertheless, illustrates the inequities that can result if a lien were dependent upon a timely filing regardless of actual knowledge. It would also give more respect to form rather than substance, which would not be in harmony with NDCC § 31–11–05(19).

The defendant-insurer made much of the fact that the lien was not filed within thirty days, that it was in fact filed almost three and a half years later, and that, therefore, the insurer should not be held liable. The insurer, however, disregarded, or, for that matter, did not recognize, or accept the fact that it had actual knowledge prior to the settlement. As we have pointed out earlier herein, a person having actual knowledge need not be also placed in a position of having constructive notice or knowledge. If liability were dependent upon constructive notice rather than actual notice, then strict compliance with the statute would be required and would first have to be established, but that is not the issue because the insurer had actual notice. The United States district court in certifying the question used the factual basis of actual notice. We must accept the question as presented. Conceivably, the court indirectly made a finding of fact that actual notice was accomplished based upon the stipulated facts.

■ We conclude that those institutions furnishing care and treatment as set out in NDCC § 35–08–01 acquire a lien upon *rendering such service*. However, if the en-

forcement of the lien depends upon constructive notice the timely filing requirements, as set out in Ch. 35–18, must first be met; but, if actual knowledge existed or actual notice was given the need for constructive notice is eliminated.

■ In response to the question presented, we conclude that the North Dakota Century Code Ch. 35–18 hospital lien is valid and enforceable against the insurer of the alleged tortfeasor if the insurer had actual notice of the filed lien but, nevertheless, settled with the patient-claimant and disbursed the funds free of the purported lien. Our direct answer to the question presented is that the lien is valid.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

PEDERSON, Justice, dissenting.

Chapter 35–18, NDCC is obviously ambiguous. By concentrating attention on particular provisions, one will logically conclude, as Justice Sand has, that Rolla Community Hospital's claim is entitled to the protection of the statute.

By concentrating attention on other provisions, I can readily conclude that the Hospital should have complied with every technicality if it wanted a lien. For example, § 35–18–03 is explicit in defining the contents of a "lien statement." If someone tries to comply with the seven requirements of § 35–18–03 but mistakenly misses one, the existence of the lien would be challenged. No one will try to comply because we have provided an easier way.

The Legislature ought to reexamine and simplify this statute.