MACON–BIBB COUNTY HOSPITAL AUTHORITY d/b/a Medical Center of Central Georgia, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE CO., et al., Defendants.

Civ. A. 91–58–1–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

June 19, 1992.

---

John A. Draughon, Macon, Ga., for plaintiff.

Stanley M. Karsman, Savannah, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

Before the court is the issue whether a hospital lien, not filed within the statutory time period, can be enforced against defendants, who had actual notice of the lien. This issue has not been addressed by the Georgia courts. Both sides have filed motions for summary judgment.

## FACTS

The facts in this case are undisputed. On March 20, 1989, Russell A. Barber was injured in an automobile accident allegedly caused by the negligence of defendants Great Sutton Shows, Inc. ("Great Sutton") and Robert Allen Spiars.[1] Defendant Na-

tional Union Fire Insurance Company ("National Union") is the liability insurer for Great Sutton and Spiars.

Barber was admitted to the Medical Center of Central Georgia ("Hospital") for treatment of his injuries and incurred charges of $95,890.96. He was discharged on April 19, 1989.

On May 22, 1989, the Hospital filed in the appropriate superior court a hospital lien affidavit reflecting the charges for Barber's treatment from March 20 to April 19, 1989. The filing date was thirty-three days after Barber's discharge from the Hospital. National Union received a copy of the lien affidavit by certified mail on May 25, 1989.

Shortly after the accident, Barber filed a suit against Great Sutton and Spiars in the Southern District of Georgia. During the course of the litigation in the Southern District, all named defendants in this case learned on or about July 21, 1989, that the Hospital had filed a hospital lien affidavit reflecting the charges for Barber's first hospitalization.

Barber was readmitted to the Hospital for additional treatment on May 12, 1989, and discharged on May 24. He incurred charges of $24,074.45. Barber was also treated on June 7, June 22–23, and July 23, 1989. The charges for these visits were $1,079.55, $1,829.61, and $1,059.50, respectively.

On December 7 and 8, 1989, the Hospital filed an amended lien affidavit reflecting the initial and subsequent hospitalization of Barber in the appropriate superior courts. National Union received a copy of the amended lien affidavit by certified mail on December 13, 1989.

In March, 1990, National Union settled Barber's claim against Great Sutton and Spiars in the Southern District case for $450,000. The Hospital did not join in the settlement agreement.

The Hospital obtained a judgment in the amount of $147,713.96 against Barber in the Southern District on March 14, 1991. This amount included the total hospital

---

1. Spiars has never been served with process in this case.

costs incurred by Barber plus late charges. No part of this judgment has been satisfied.[2]

The Hospital filed its complaint in this court on February 15, 1991, to enforce the lien against National Union and the other named defendants. The Hospital and defendants have filed motions for summary judgment.

## DISCUSSION

The question before the court is whether the Hospital can enforce its lien against defendants despite the Hospital's failure to file the lien within the 30–day period required in O.C.G.A. § 44–14–471. This question has never been addressed by the Georgia courts; therefore, the language of the applicable statutes and decisions of other state courts provide the only guidance for this court's decision.

■ In the Georgia Code, a hospital's right to a lien on an injured person's causes of action for costs of treatment is established in O.C.G.A. § 44–14–470(b):

> Any person, firm, hospital authority, or corporation operating a hospital in this state *shall have a lien* for the reasonable charges for hospital care and treatment of an injured person who enters the hospital within one week after receiving such injuries, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital care, subject, however, to any attorney's lien. (emphasis added).

Under the language of the statute, the Hospital has a valid lien on all causes of action held by Barber against Great Sutton and Spiars. Furthermore, this lien attached at the moment Barber received treatment because the statute states that a hospital "shall have a lien for the reasonable charges for hospital care and treatment ... upon any and all causes of action

accruing to the [injured] person." The statute sets out no conditions precedent such as filing requirements for obtaining a valid lien. Therefore, the Hospital's late filing has no effect on the validity of the lien. *See Rolla Community Hospital, Inc. v. Dunseith Community Nursing Home, Inc.,* 354 N.W.2d 643 (N.D.1984); *Palm Springs General Hospital, Inc. v. State Farm Mutual Automobile Insurance Company,* 218 So.2d 793 (Fla.Dist.Ct. App.1969), *aff'd,* 232 So.2d 737 (Fla.1970).

■ O.C.G.A. § 44–14–471 governs the method for perfecting a hospital lien:

> In order to *perfect* the lien provided for in Code Section 44–14–470, the operator of the hospital, *within 30 days* after the person has been discharged therefrom, shall file in the office of the clerk of the superior court of the county in which the hospital is located and in the county wherein the patient resides ... a verified statement setting forth the name and address of the patient.... Such claimant shall also, within one day after the filing of the claim or lien, mail a copy thereof to any person, firm or corporation claimed to be liable for the damages, said copy to be mailed to the address given in the statement. The filing of the claim or lien *shall be notice* thereof to all persons, firms, or corporations liable for the damages, whether or not they are named in the claim or lien. (emphasis added).

There is no dispute that the Hospital failed to perfect its lien properly. The original lien affidavit was filed thirty-three days after Barber was discharged. Furthermore, the amended lien affidavit was filed several months after Barber's last visit to the Hospital for treatment.

However, there is also no dispute that defendants had actual notice of the hospital lien before they reached a settlement with Barber. Thus, the purpose of the perfection statute—that "the filing of the claim or lien shall be notice" to all liable parties—was accomplished.

---

**2.** Barber filed a Chapter 13 bankruptcy petition on June 5, 1991, and under the Chapter 13 plan,

unsecured creditors are to be paid 1.3% of their claims.

Nonetheless, defendants contend that the Hospital's failure to perfect the lien prevents enforcement of the lien. They rely upon the law applying to mechanics liens and security interests to support this contention and claim that hospital liens should be treated in the same manner.

Defendants' analogy to mechanics liens does not apply. It is true that a mechanics lien filed after the expiration of the statutory time period is unenforceable. However, this requirement for strict compliance is expressly stated in O.C.G.A. § 44-14-361.1(a):

> To make good the liens specified ..., they must be created and declared in accordance with the following provisions, and on *failure* of any of them the lien *shall not be effective or enforceable.* (emphasis added).

There is no comparable language of strict compliance in the hospital lien statute. Therefore, defendants' argument is not persuasive.

Defendants also analogize hospital liens to security interests. Under O.C.G.A. § 11-9-301, an unperfected security interest is subordinate to a prior lien. Defendants claim that the hospital lien in this case is like an unperfected security interest. When Barber settled his claims against defendants, the settlement took priority over the hospital lien because the lien was unperfected.

Defendants' security interest analogy is unpersuasive as well, particularly when one examines O.C.G.A. § 44-14-473. This code section governs the effect on a hospital lien of a settlement between an injured party and the liable parties:

> (a) No release of the cause or causes of action or of any judgment thereon or any covenant not to bring an action thereon shall be valid or effectual against the lien created by Code Section 44-14-470 unless the holder thereof shall join therein or execute a release of the lien; and the claimant or assignee of the lien may enforce the lien by an action against the person, firm or corporation liable for the damages....
>
> (b) No release or covenant not to bring an action which is made within ten days after the patient was discharged from the hospital shall be effective against the lien perfected in due time as provided in subsection (a) of this Code Section, regardless of whether the release, covenant not to bring an action or settlement was made prior to the time of the filing of the lien as specified in Code Sections 44-14-470 and 44-14-471....

Under subsection (a), a settlement is not valid against any lien created by § 44-14-470 unless the lien holder joins in the settlement. Unlike subsection (b), which applies to releases made within ten days of discharge, there is no perfection requirement. Hence, the settlement between defendants and Barber is not effective against the Hospital despite the Hospital's failure to perfect the lien.

In addition to the language of the Georgia code provisions that apply to hospital liens, decisions of other state courts support a finding that a hospital's failure to file within the statutory time period does not affect the hospital's enforcement of the lien. *See Rolla Community Hospital, Inc. v. Dunseith Community Nursing Home, Inc.,* 354 N.W.2d 643 (N.D.1984) (hospital lien filed three-and-a-half years after discharge was valid and enforceable where insurer had actual notice of lien prior to settlement); *Public Health Trust v. Carroll,* 509 So.2d 1232 (Fla.Dist.Ct.App. 1987) (hospital lien not invalidated by late filing); *Layton v. Home Indemnity Co.,* 9 Wash.2d 25, 113 P.2d 538 (1941).[3]

---

**3.** Defendant relies upon two cases, *Duke University Medical Center, Private Diagnostic Clinic v. Hardy,* 89 N.C.App. 719, 367 S.E.2d 6 (1988), and *In re Harris,* 50 B.R. 157 (Bankr.E.D.Wis.1985), in which the courts held that a hospital could not enforce a lien when the lien was not filed within the statutory time period.

However, these cases are distinguishable from the case at bar because the language of the hospital lien statutes expressly requires timely filing to create a valid lien. In *Duke University,* the hospital lien statute states that "no lien therein provided for shall be valid with any claims whatsoever unless the [lienholder] shall file a claim with the clerk of the court ... within 30 days...." Because the plaintiff failed to file its claim within thirty days, the court

In conclusion, the court finds that the Hospital is entitled to enforce its lien against the defendants. The lien was created at the moment the Hospital began treating Barber, and the Hospital's failure to strictly comply with the filing requirements does not affect the validity of the lien.

Furthermore, defendants were not prejudiced in any way by the late filing. The purpose of the filing requirements is to provide notice to all potentially liable parties. In this case, defendants had actual notice of the hospital lien on Barber's causes of action against them several months before they agreed to settle Barber's claims. Thus, they knowingly ran the risk of future liability to the Hospital when they settled with Barber. They cannot now rely upon a technical filing requirement to escape this liability.

Accordingly, plaintiff's motion for summary judgment is GRANTED, and defendants' motion for summary judgment is DENIED. Defendants are jointly and severally liable to plaintiff in the amount of $147,713.96.

SO ORDERED.

found that the lien was invalid. *Duke University*, 89 N.C.App. 719, 367 S.E.2d 6.

Likewise, in *Harris*, the hospital lien statute states that the hospital must comply with all filing requirements in order to have a valid lien. Because the plaintiff failed to show that it had complied with these requirements, the court

held that the lien was invalid. *Harris*, 50 B.R. 157.

The requirement for strict compliance is not present in O.C.G.A. §§ 44–14–470 and 44–14–471. Therefore, these cases are not applicable to the case at bar.