The McCutchen Company, Inc., appeals from a summary judgment entered in favor of Media General, Inc., d/b/a WKRG TV-5, Media General Operations, Inc., d/b/a WKRG, and Sue Cosgrove (collectively "WKRG"). The McCutchen Company sued WKRG, alleging fraud, and WKRG counterclaimed, alleging breach of contract. The trial court entered a summary judgment in favor of WKRG on The McCutchen Company's fraud claim and on the breach-of-contract counterclaim. We affirm. *Page 1000 
 Facts and Procedural History
In 2003, The McCutchen Company, a small investment company located in Mobile, began negotiations with WKRG TV-5, a local television station that broadcasts in the Mobile area, to purchase an advertising package. The McCutchen Company was founded by Jerry McCutchen, who is also its president and sole shareholder. McCutchen and his wife, Debbie, acting on behalf of The McCutchen Company, met several times with the local sales manager for WKRG, Sue Cosgrove, and its account representative, Rhonda Pullen. Cosgrove and Pullen proposed three different advertising packages to the McCutchens. The McCutchens expressed interest in an advertising package that included several advertising spots, morning and evening bill-board advertisements, [1] and a five-minute segment following the 9 a.m. to 10 a.m. news broadcast, in which Mr. McCutchen would give investment advice.
During one of the meetings with Cosgrove and Pullen, McCutchen asked Cosgrove how many new customers The McCutchen Company could expect as a result of the television advertising campaign. McCutchen alleges that Cosgrove responded that he could expect "at least fifty" new clients per month. McCutchen stated in his deposition that he believed Cosgrove's estimate was a "reasonable expectation" and that he thought Cosgrove believed the statement when she made it. WKRG denies that Cosgrove told McCutchen that The McCutchen Company could expect at least 50 new clients per month as a result of advertising on channel 5. Cosgrove testified in her deposition that she told McCutchen that he could "expect as many as 50 leads a month if he continued to work and stay with the contract." Cosgrove further stated that she told McCutchen that she based her estimate on the results other WKRG clients had experienced using similar advertising packages. Cosgrove admitted in her deposition that the statement that one could expect at least 50 new clients per month could induce an individual into entering into an advertising contract. Warren Fihr, WKRG's general sales manager, admitted in his deposition that he could not think of any reason to tell an advertising customer that he or she could expect at least 50 new clients per month other than to induce the customer into entering a promotional agreement.
McCutchen signed a two-year noncancellable advertising contract. The contract provides that The McCutchen Company was required to purchase a minimum of $30,000 in advertising in 2003 and to increase by at least 10 percent the amount of advertising services it purchased in 2004.[2] The McCutchen Company agreed to purchase $31,400 of advertising for 2003 and $44,100 for 2004.
McCutchen testified that The McCutchen Company did not obtain any new customers during the first four months of the advertising campaign. In January 2004, The McCutchen Company gave WKRG two weeks' notice of its intention to cancel the advertising contract, which the parties acknowledge is the industry standard for canceling an advertising contract. WKRG *Page 1001 
then notified The McCutchen Company that the advertising contract between The McCutchen Company and WKRG was an annual contract that was not governed by the industry standard of two weeks' notice, and that, therefore, WKRG expected The McCutchen Company to abide by the terms of the contract.
The McCutchen Company then sued WKRG, claiming that Cosgrove's alleged statement that The McCutchen Company could expect at least 50 new customers per month fraudulently induced it to enter into the advertising contract. WKRG counter-claimed, alleging that The McCutchen Company had breached the advertising contract. WKRG moved for a summary judgment on both The McCutchen Company's fraud claim and WKRG's breach-of-contract counterclaim. The trial court entered a summary judgment in favor of WKRG on both claims. The McCutchen Company appeals.
 Standard of Review
"We review the trial court's grant or denial of a summary judgment motion de novo." Smith v. State Farm Mut. Auto.Ins. Co., 952 So.2d 342, 346 (Ala. 2006) (citingBockman v. WCH, L.L.C., 943 So.2d 789 (Ala. 2006)). A summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. If the movant meets this initial burden, the burden then shifts to the nonmovant to present "substantial evidence" of a genuine issue of material fact. Ex -parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); see also § 12-21-12(d), Ala. Code 1975. In determining whether a genuine issue of material fact exists, this Court views the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts in favor of the nonmovant. Jones v. BP Oil Co., 632 So.2d 435, 436
(Ala. 1993). "The trial court's ruling on a question of law carries no presumption of correctness, and this Court reviews de novo the trial court's conclusion as to the appropriate legal standard to be applied." Dunlap v. Regions Fin.Corp., 983 So.2d 374, 377 (Ala. 2007) (citing Ex parteGraham, 702 So.2d 1215, 1221 (Ala. 1997)).
 Analysis
The McCutchen Company maintains that the summary judgment on its fraud claim and on WKRG's breach-of-contract counterclaim was not warranted because, it says, The McCutchen Company presented substantial evidence demonstrating that there are genuine issues of material fact as to both claims.
 A. Fraud Claim
The McCutchen Company argues that the trial court erred in entering a summary judgment in favor of WKRG on The McCutchen Company's fraud claim. "`The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.'" Allstate Ins. Co. v. Eskridge,823 So.2d 1254, 1258 (Ala. 2001) (quoting Brushwitz v.Ezell, 757 So.2d 423, 429 (Ala. 2000)). Viewing the evidence, as we must, in the light most favorable to The McCutchen Company, we assume that Cosgrove represented to The McCutchen Company that it could expect to obtain at least 50 new customers per *Page 1002 
month as a result of the advertising campaign. The McCutchen Company contends that this was "a misrepresentation of a material fact." The McCutchen Company further contends that it reasonably relied on Cosgrove's statement and that it suffered damage because The McCutchen Company spent a substantial amount of money paying for advertising services that generated no new customer accounts.
WKRG argues that it was entitled to a summary judgment on The McCutchen Company's fraud claim because the statement The McCutchen Company alleges Cosgrove made was nothing more than her opinion or a prediction of future events and was not "a misrepresentation of a material fact." WKRG further argues that The McCutchen Company's fraud claim fails because The McCutchen Company did not show that Cosgrove intended to deceive The McCutchen Company at the time she allegedly made the statement and The McCutchen Company did not show that it reasonably relied on the statement.
This Court has stated that "[a] mere statement of opinion or prediction as to events to occur in the future is not a statement of a `material fact' upon which individuals have the right to rely and, therefore, it will not support a fraud claim." Crowne Invs., Inc. v. Bryant, 638 So.2d 873,877 (Ala. 1994). "Where the representation of an opinion is involved, a person must prove not only that there was an intent to deceive, but also that his reliance was reasonable."Reynolds v. Mitchell, 529 So.2d 227, 231 (Ala. 1988) (citing Bedwell Lumber, Inc. v. T T Corp.,386 So.2d 413 (Ala. 1980)).
We agree with WKRG that Cosgrove's statement was not a misrepresentation of a material fact but was a statement of opinion or a prediction of future events. When asked by McCutchen how many new customers he could expect as a result of the advertising campaign, Cosgrove responded, according to The McCutchen Company, by telling McCutchen that he could expect at least 50 new customers per month. Cosgrove's statement has every appearance of an opinion or a prediction of future events. See Crowne Invs., 638 So.2d at 877 (" `Ordinarily a prediction as to events to occur in the future is to be regarded as a statement of opinion only, on which the adverse party has no right to rely.'" (quoting Lawson v.Cagle, 504 So.2d 226, 227 (Ala. 1987))); Fincher v.Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256, 259
(Ala. 1991) (statement that the purchaser's car "would perform in accordance with his expectations" amounted "to nothing more than `puffery' or predictions concerning the anticipated performance of the Mercury Sable line of automobiles"); andD.H. Holmes Dep't Store v. Fell, 472 So.2d 1001, 1003
(Ala. 1985) ("The alleged representation that defendants would effect a permanent removal of plaintiffs' facial hair" was not a material fact because it "related to a future event.").
The McCutchen Company argues that even if the statement was a statement of opinion or a prediction of future events, it can still recover for fraud because, it says, Cosgrove intended to deceive The McCutchen Company and The McCutchen Company reasonably relied on that statement because the McCutchens perceived Cosgrove to be an expert in the advertising field. The McCutchen Company argues that Cosgrove's testimony that the statement attributed to her could induce an individual into entering into a contract and Warren Fihr's testimony that he could think of no reason for making such a statement other than to induce a customer into entering into an advertising contract demonstrate that Cosgrove acted with an intent to deceive The McCutchen Company. However, WKRG contends, and we agree, *Page 1003 
that these statements alone are not substantial evidence that Cosgrove had an intent to deceive.
First, McCutchen admitted that he thought Cosgrove believed the statement when she made it. This concession contradicts the argument that Cosgrove intended to deceive the McCutchens.Vance v. Huff, 568 So.2d 745, 750 (Ala. 1990) (business associate failed to show present intent to deceive when he "testified during his deposition that he believed that Huff was `sincere' when he made these alleged promises, but decided at a later date not to honor them"); Beaulieu v.Wynfrey Hotel, Ltd., 718 So.2d 83, 85 (Ala.Civ.App. 1998) (employee did not present substantial evidence that employer intended to deceive employee when employee testified that "he believed that [his supervisor] was not lying when he made the statements" that employee's wage increase was awaiting approval).
Second, the two pieces of evidence that The McCutchen Company argues constitute substantial evidence of Cosgrove's intent to deceive do not demonstrate that Cosgrove in fact had the present intent to deceive the McCutchens when she allegedly made the statement. The admission by Fihr that he could think of no other reason to make such a statement except to induce a customer into entering into an advertising contract does not indicate what Cosgrove's motivation was or whether she believed the statement to be true or false. Fihr's statement shows only what it says" that he could not think of any reason to make such a statement except to induce someone to enter into a contract. GoodyearTire Rubber Co. v. Washington, 719 So.2d 774, 776
(Ala. 1998) (party alleging fraud did not provide substantial evidence of Tire Pro's intent to deceive when the evidence did "not include direct documentary evidence, or direct testimony, indicating that Tire Pro's manager . . . intended not to fulfill the promises made to Washington"); Crowne Invs.,638 So.2d at 877 (summary judgment was proper when "the plaintiffs offered no evidence that Bryant intended to deceive Crowne and Monroeville as to [insurance company's] future performance" even though Bryant told Crowne and Monroeville that "the insurance was a `guaranteed issue'").
Although Cosgrove admitted that the statement that an individual could expect at least 50 new clients per month could induce a customer into entering into an advertising contract, her statement proves only that she believes that such a statement could be an inducement. It does not demonstrate that Cosgrove thought the statement was untrue or that she had a present intent to deceive when she made the statement. Speculation is insufficient to prove that a party had a present intent to deceive. Moncrief v. Donohoe, 892 So.2d 379,383 (Ala.Civ.App. 2003) (evidence did not constitute substantial evidence of present intent to deceive because the "evidence is speculative as to her intent at the time the alleged promise, if any, was made"). Therefore, we conclude that the trial court properly entered a summary judgment in favor of WKRG because The McCutchen Company has not provided substantial evidence that Cosgrove intended to deceive the McCutchens.
B. Breach-of-Contract Counterclaim
The McCutchen Company argues that the trial court erred in entering a summary judgment for WKRG on its breach-of-contract counterclaim because the industry standard associated with advertising contracts allows a party to cancel an advertising contract with two weeks' notice. WKRG contends that industry standards do not apply to The McCutchen Company's advertising contract because that contract specifies that it is an annual *Page 1004 
contract and that it is noncancellable. WKRG argues that a court should not use industry standards to construe a contract when the contract is not ambiguous.
"`A plaintiff can establish a breach-of-contract claim by showing "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." `" Winkleblack v. Murphy, 811 So.2d 521, 529
(Ala. 2001) (quoting State Farm Fire Cos. Co. v.Slade, 747 So.2d 293, 303 (Ala. 1999), quoting in turnSouthern Med. Health Sys., Inc. v. Vaughn,669 So.2d 98, 99 (Ala. 1995) (emphasis omitted)). The parties do not dispute that The McCutchen Company and WKRG executed a valid advertising contract or that WKRG performed under the contract. The dispute is whether, as The McCutchen Company argues, it had the right to cancel the contract by giving WKRG two weeks' notice.
We conclude that The McCutchen Company failed to support its argument that the advertising contract was governed by the industry standard for cancellation notice because it fails to cite the record or any legal authority in support of its argument." "Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.'" Henderson v.Alabama A M Univ., 483 So.2d 392, 392 (Ala. 1986) (quoting Gibson v. Nix, 460 So.2d 1346, 1347
(Ala.Civ.App. 1984)). Moreover, The McCutchen Company's argument that the two-week cancellation standard applies to this contract appears to be without merit because this Court has stated that "`evidence of custom is admissible only to explain an ambiguous contract or to add to it an element not in contravention of its terms; but such evidence is never admissible to contradict the plain unambiguous covenants and agreements expressed in the contract itself.'" Mall GiftCards, Inc. v. Wood, 288 Ala. 355, 358, 261 So.2d 31, 34
(1972) (quoting Miller v. Gray, 136 Tex. 196, 200, 149 S.W.2d 582, 583 (1941)). The advertising contract at issue in this case clearly specifies that it is a noncancellable annual contract, and industry standards do not apply to alter these unambiguous terms. The summary judgment entered in favor of WKRG on the breach-of-contract counter-claim, therefore, was proper.
The McCutchen Company argues finally that the trial court erred in awarding WKRG $48,300 in damages because, it argues, WKRG had a duty to mitigate its damages; therefore, it argues, WKRG was entitled only to damages for the advertising services it did not sell to other parties after The McCutchen Company canceled its contract. The McCutchen Company points out that WKRG was able to sell all the promotional spots and the five-minute segment after the 9 a.m. to 10 a.m. news broadcast but was unable to sell the billboard advertisements that appeared during the 6 a.m. and 6 p.m. news broadcasts. This is a facially persuasive argument; however, The McCutchen Company's brief contains no citation to any relevant legal authority to support its contention that WKRG had a duty in these circumstances to mitigate its damages from the loss of advertising revenues. Therefore, we affirm the trial court's damages award. Henderson, 483 So.2d at 392 (" "Where an appellant fails to cite an authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.'" (quoting Gibson v. Nix,460 So.2d at 1347)). Because The McCutchen Company has not provided substantial evidence showing that the trial court erred in entering a summary judgment on WKRG's *Page 1005 
breach-of-contract counterclaim, we affirm that judgment.
 Conclusion
The McCutchen Company has not presented substantial evidence demonstrating that there is a genuine issue of material fact. Therefore, the trial court's summary judgment in favor of WKRG on The McCutchen Company's fraud claim and WKRG's breach-of-contract counterclaim was proper, and we affirm the summary judgment.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] The billboard advertisements aired after the stock-report segment on channel 5 during the 6 a.m. and 6 p.m. news broadcasts and included audio or visual promotional spots that identified The McCutchen Company as a sponsor of the stock-report broadcast.
[2] The contract also required The McCutchen Company "to pay all costs of collection including attorney's fees and court cost[s] if collected by law or through an outside collection agency" if The McCutchen Company defaulted on any payments due under the contract.