SEE, Justice.
 

 The Board of Trustees of the University of Alabama, for its division, University of Alabama Hospital in Birmingham (“UAB Hospital”), and Gadsden Regional Medical Center (“Gadsden Regional”) (hereinafter collectively referred to as “the hospitals”) claim that a settlement among American Resources Insurance Company, Inc. (“American Resources”), Hill Plumbing and Heating Inc. (“Hill Plumbing”), Raymond Luther Hill (“Hill”), the law firm of Cory, Watson, Crowder
 
 &
 
 Degaris, P.C. (“Cory Watson”), and David A. Gann, as administrator of the estate of Patricia Ann Gann, deceased (“Gann”) (hereinafter collectively referred to as “the Gann parties”), impaired the hospitals’ respective statutory hospital liens. The hospitals appeal from a summary judgment in favor of the Gann parties and argue that there is substantial evidence indicating that the hospitals’ respective liens are enforceable against the Gann parties. We affirm in part and reverse in part.
 

 Facts and Procedural History
 

 The facts of the case are undisputed. On May 22, 2004, Patricia Ann Gann (“Patricia”) was fatally injured in an automobile accident in Gadsden in Etowah County. The accident occurred when the vehicle in which Patricia was a passenger was struck by a sport-utility vehicle (“SUV”) driven by Hill, an agent of Hill Plumbing. Patricia was taken to Gadsden Regional for emergency care and then, later that same day, was transferred to UAB Hospital. Patricia remained at
 
 *524
 
 UAB Hospital until she died of her injuries on June 18, 2004. The charges for Patricia’s treatment totaled $23,817.25 at Gadsden Regional and $415,229.12 at UAB Hospital. Under § 35-11-370, Ala. Code 1975,
 
 [1]
 
 the hospitals had an automatic lien for all reasonable charges the hospitals incurred for Patricia’s treatment, and each hospital attempted to perfect its lien pursuant to § 35-ll-371(a), Ala.Code 1975.
 
 [2]
 
 Gadsden Regional filed its hospital lien in the Etowah Probate Court on June 23, 2004. UAB Hospital filed its lien on June 30, 2004, in the St. Clair Probate Court
 
 [3]
 
 and, in February 2005, filed a second lien, this time in Etowah County.
 

 A personal-injury action was filed in the Etowah Circuit Court on behalf of Patricia and against Hill, Hill Plumbing, and others (hereinafter collectively referred to as “the Etowah defendants”), seeking, among other things, past and future medical expenses. Following Patricia’s death, the complaint was amended to add a wrongful-death claim and to name David Gann as Patricia’s personal representative. This Etowah action was subsequently sent to mediation, and, although neither hospital was a party to the action, the hospitals were invited to the mediation by court order because of their respective liens.
 

 All the parties to the Etowah action and UAB Hospital attended the mediation. UAB Hospital eventually withdrew from the process because it was unable to settle with Gann. The remaining parties reached a settlement and reduced their agreement to a memorandum; that memorandum provided:
 

 “Following mediation of this cause on November 30, 2005, it is hereby agreed that this action will be settled and the
 

 
 *525
 
 claims against [the Etowah defendants] for wrongful death under the first amended complaint dismissed with prejudice in consideration of the payment of the sum of $700,000.00. Additional Terms of Settlement:
 

 “(1) [Gann] will dismiss all personal injury claims under the original complaint or complaint as amended with prejudice.
 

 “(2) [Gann] and his counsel will save and hold defendants harmless from all liens or subrogation claims, including but not limited to UAB Hospital and Gadsden Regional Medical Center and any expense, lawyers fees or costs necessary to defend same.
 

 “It is understood and agreed that the foregoing ‘additional terms of settlement’ have been agreed upon by the parties with the mediator acting as scrivener. The parties agree to execute such releases and a stipulation of dismissal or other request for a dispositive order as may be appropriate.”
 

 The day after the parties reached this agreement, on December 1, 2005, Gann sought, and was granted, an order dismissing with prejudice the personal-injury claims against the Etowah defendants. On December 5, 2005, UAB Hospital moved the Etowah Circuit Court to intervene in the Etowah action.
 
 [4]
 
 After conducting a hearing, the Etowah Circuit Court denied UAB Hospital’s motion to intervene. UAB Hospital did not appeal that decision. Gann eventually signed a pro tanto settlement agreement and release with the Eto-wah defendants on January 16, 2006 (“the settlement”). It is undisputed that all parties in the Etowah action were aware of the liens of the hospitals at the time of the settlement.
 

 In July 2006, the hospitals filed in the Jefferson Circuit Court (“the trial court”) the present action against the Etowah defendants, alleging that the settlement impaired the hospitals’ statutory hospital liens. On January 17, 2007, the hospitals amended their complaint to include Cory Watson and Gann as defendants.
 
 [5]
 
 The Gann parties moved the trial court for a summary judgment, arguing that the hospitals had failed to perfect their liens, that the hospitals’ liens did not attach to the proceeds derived from a settlement of a wrongful-death claim, and that the hospitals’ claims were barred by the doctrine of res judicata.
 
 [6]
 
 The trial court entered a summary judgment in favor of the Gann parties “as to the claims for impairment,” finding that “the parties to the settlement in the Etowah Action intended to attribute their settlement and the funds paid, only to the Gann wrongful death claims.” The
 
 *526
 
 trial court denied the Gann parties’ motion for a summary judgment on the issues of res judicata and the hospitals’ alleged failure to perfect their liens.
 
 [7]
 
 The hospitals now appeal.
 

 Standard of Review
 

 A summary judgment is appropriate only if the trial court finds that there are no genuine issues of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(e)(3), Ala. R. Civ. P. On appeal, this Court reviews a summary judgment de novo,
 
 Ex parte Essary,
 
 992 So.3d 5, 8 (Ala.2007), and affords no presumption of correctness to the trial court’s ruling on questions of law or its conclusion as to the appropriate legal standard to be applied.
 
 McCutchen Co. v. Media Gen., Inc.,
 
 988 So.2d 998, 1001 (Ala.2008).
 

 Analysis
 

 The trial court stated as follows in its summary-judgment order:
 

 “The Court finds that the Defendants’ Motion for Summary Judgment is due to be GRANTED as to the claims for impairment. It appears that the parties to the settlement in the Etowah Action intended to attribute their settlement and the funds paid, only to the Gann wrongful death claims.
 

 “In reaching this decision, the starting point for the Court is that a Court should encourage parties to settle their disputes. The Court believes that this is best done by giving the parties the greatest possible latitude in reaching settlements. This can be best accomplished by leaving the Plaintiff as ‘master of his lawsuit.’ The Court recognizes that in so holding this may on occasion result in injury or loss to persons who would stand to benefit were the settlement couched under one claim rather than another. Although Plaintiffs call this Court’s attention to the fact that the dismissal of the personal injury action was a condition of the overall settlement, the Court finds that the settlement documents in the Etowah Action are clear. [The Gann parties] were primarily motivated by their desire to frame their settlement so as to avoid reach of Plaintiffs’ hospital liens to that settlement. The settlement documents were carefully prepared so as to specifically pay the settlement only under the wrongful death claim. Under Alabama Code section 6-5-410(c) (1975), a hospital lien does not attach to the proceeds of a wrongful death settlement.
 
 Board of Trustees of University of Alabama v. Harrell,
 
 43 Ala.App. 258, 188 So.2d 555 (Ala.App.1965).”
 

 It appears from the order that the trial court entered a summary judgment for the Gann parties because it found that, as a matter of law, the Gann parties were entitled to characterize the dismissal of the personal-injury claims as unrelated to the agreement that settled Gann’s wrongful-death claim, notwithstanding the fact that the dismissal of the personal-injury claims was a condition of the settlement agreement. This is a question of law and, under the applicable standard of review, is afforded no presumption of correctness.
 
 Ex parte Graham,
 
 702 So.2d 1215, 1221 (Ala.1997) (“[0]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.”).
 

 
 *527
 
 The hospitals frame the issue on appeal as whether their impairment claim is supported by “substantial evidence”; however, the gravamen of the hospitals’ argument is that they had automatic statutory liens that attached to Gann’s personal-injury claims and that, because all parties to the settlement had actual knowledge of the hospitals’ liens before the settlement, the hospitals’ liens were perfected even though the hospitals had failed to strictly comply with the hospital-lien-perfection statute. Hospitals’ brief at 14, 21, and 35. Therefore, the hospitals argue, they have a valid impairment claim against the Gann parties and that claim is supported by substantial evidence.
 
 Id.
 
 at 23.
 

 I.
 
 Creation of a Hospital Lien
 

 Section 35-11-370, Ala.Code 1975, provides:
 

 “Any
 
 person, firm,
 
 hospital
 
 authority or corporation operating a hospital in this state
 
 shall have a lien for all reasonable charges for hospital care, treatment
 
 and maintenance
 
 of an injured person who entered such hospital within one week after receiving such injuries, upon any and all actions, claims,
 
 counterclaims and demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person, and upon all judgments, settlements and settlement agreements entered into by virtue thereof on account of injuries giving rise to such actions, claims, counterclaims, demands, judgments, settlements or settlement agreements and which necessitated such hospital care, subject, however, to any attorney’s lien.”
 

 (Emphasis added.)
 

 “[Sjection [35-11-370] was-intended to give hospitals and other health care providers an automatic lien for the reasonable value of their services.”
 
 Ex parte Infinity Southern Ins. Co.,
 
 737 So.2d 463, 464 (Ala.1999) (citing
 
 Guin v. Carraway Methodist Med. Ctr.,
 
 583 So.2d 1317, 1319 (Ala.1991)). The Gann parties do not dispute that the hospitals have a valid lien for the reasonable charges the hospitals incurred on Patricia’s behalf. Gann parties’ brief at 36. This Court has previously noted that a hospital lien does not attach to the proceeds of a wrongful-death claim,
 
 Jones v. DCH Health Care Auth.
 
 621 So.2d 1322, 1324 (Ala.1993); however, under § 35 — 11— 370 the hospitals’ statutory liens attached to the personal-injury claims filed on Patricia’s behalf.
 
 [8]
 
 The Gann parties admit that the hospitals’ liens were automatic, but they argue that the liens were not perfected. Gann Parties’ brief at 36.
 

 II.
 
 Perfection of a Hospital Lien
 

 Although a hospital lien may be automatic, perfection of the lien is not. Section 35-ll-371(a), Ala.Code 1975, provides:
 

 “In order to perfect such lien the operator of such hospital, before or within 10 days after such person shall have been discharged therefrom shall file in the office of the judge of probate of the county or counties in which such cause of action arose a verified statement
 
 setting forth the name and address of such patient, ... the name and location of such hospital and the name and address of the operator thereof, the dates of admission and discharge of such patient therefrom, the amount claimed to be due for such hospital care, and to the best of claimant’s knowledge, the names and addresses of all persons, firms or corporations claimed by such injured person, or the legal representative of such person, to be liable for damages arising from
 
 *528
 
 such injuries; such claimant shall also within one day after the filing of such claim or lien, mail a copy thereof by registered or certified mail, postage prepaid, for each person, firm or corporation so claimed to be liable on account of such injuries, at the addresses so given in such statement, and to the patient, his guardian or his personal representative at the address given at the time of admission. The filing of such claim or lien shall be notice thereof to all persons, firms or corporations liable for such damages whether or not they are named in such claim or lien.”
 

 (Emphasis added.) A hospital perfects its lien under 35-ll-371(a) if it files within 10 days of the patient’s discharge from the hospital a verified statement (containing the required information) in the office of the judge of probate of the county in which the cause of action arose and, within one day of filing the lien, mails a copy of the lien to the parties alleged to be liable for the injuries.
 
 [9]
 
 It is worth noting, however, that in Alabama, a hospital’s failure to “perfect” a hospital lien does not affect the validity of the lien.
 
 Guin,
 
 583 So.2d at 1319.
 

 The record indicates that Patricia was injured on May 22, 2004, in Etowah County. That same day she was taken to Gadsden Regional; she was then transferred to UAB Hospital, where she died on June 18, 2004. Gadsden Regional filed its lien in the Etowah Probate Court on June 23, 2004, some 31 days after Patricia was transferred to UAB Hospital. UAB Hospital filed its lien in the St. Clair Probate Court on June 30, 2004, 12 days after Patricia’s death,
 
 [10]
 
 and later, in February 2005, it filed a lien in Etowah County.
 

 The hospitals acknowledge that they did not strictly comply with the requirements of § 35-ll-371(a); however, they argue that the statute should be broadly construed so that the technical requirements of the statute do not defeat a hospital’s claim, especially in this instance, where it is undisputed that the Gann parties had actual knowledge of the liens at the time of the settlement. Hospitals’ brief at 35. On the other hand, the Gann parties argue that under the plain language of the statute neither hospital’s respective statutory lien was perfected, because, they argue, the liens were untimely and improperly filed. Gann parties’ brief at 34. We disagree.
 

 We begin by noting that “[t]he purpose of Alabama’s hospital-lien statute is, by giving a hospital an automatic lien for the reasonable value of its services, to induce it to receive a patient injured in an accident, without first considering whether the patient will be able to pay the medical bills incurred.”
 
 Ex parte University of South Alabama,
 
 761 So.2d 240, 244 (Ala.1999). This Court has not yet addressed “[t]he issue whether such actual notice [of a hospital lien] can serve in place of the constructive notice [required by the statute].”
 
 Ex parte Infinity Southern Ins. Co.,
 
 737 So.2d at 466. However, this Court has had the opportunity to construe Alabama’s hospital-lien statutes in the past and, in
 
 Guin v. Carraway Methodist Medical Center,
 
 we noted: “ ‘[I]t has generally been held or recognized that [the hospital-lien statutes] should not be technically ap-
 
 *529
 
 plied so as to defeat just hospital claims, and that such statutes are to be liberally construed in this respect.’ ” 583 So.2d at 1319 (quoting Annot., 25 A.L.R.3d 874, § 5(b) (1969)).
 

 The hospitals cite
 
 Macon-Bibb County Hospital Authority v. National Union Fire Insurance Co.,
 
 793 F.Supp. 321 (M.D.Ga.1992), and
 
 Rolla Community Hospital, Inc. v. Dunseith Community Nursing Homs, Inc.,
 
 354 N.W.2d 643 (N.D.1984), in support of their position that actual notice may serve in the place of the constructive-notice requirement of § 35-ll-371(a). Hospitals’ brief at 32-33. Although these authorities are not binding on this Court, we find them persuasive.
 

 The federal district court in
 
 Macon-Bibb County Hospital Authority
 
 noted that the purpose of Georgia’s hospital-lien-perfection statute
 
 [11]
 
 was “to provide notice [of the hospital’s lien] to all potentially liable parties.” 793 F. Supp. at 325. The court concluded that because the settling parties “had actual notice of the hospital lien on [the -injured party’s] causes of action against [the settling parties] several months before they agreed to settle [the] claims” the settling parties “cannot now rely upon a technical filing requirement to escape this liability.” 793 F.Supp. at 325.
 
 [12]
 

 Similarly, the Supreme Court of North Dakota concluded in
 
 Rolla Community Hospital
 
 that “if the enforcement of the [hospital] lien depends upon constructive notice[,] the timely filing requirements ... must first be met; but, if actual knowledge existed or actual notice was given[,] the need for constructive notice is eliminated.” 354 N.W.2d at 650-51.. In its decision, the Supreme Court of North Dakota noted: “ ‘The object of the recording (filing) statutes is the constructive notice which is given to all the world as to the rights of the parties thereto. Actual notice to third parties, where it can be shown, is as effective as recordation.’ ” 354 N.W.2d at 650
 
 *530
 
 (quoting
 
 Bank of Ringgold v. West Publ’g Co.,
 
 61 Ga.App. 426, 6 S.E.2d 598, 599 (1939)).
 

 The Gann parties argue that this Court should narrowly construe § 35-ll-371(a), Ala.Code 1975, but they do not address this Court’s recognition that § 35-11-371(a) is to be broadly construed.
 
 See Guin, supra.
 
 The Gann parties instead direct our attention to three decisions in which courts have narrowly construed hospital-lien-perfection statutes:
 
 Duke University Medical Center v. Hardy,
 
 89 N.C.App. 719, 367 S.E.2d 6 (1988),
 
 In re Harris,
 
 50 B.R. 157 (Bankr.E.D.Wis.1985), and
 
 Melichar v. Michelson,
 
 281 N.Y. 671, 22 N.E.2d 868 (1939).
 
 [13]
 
 The first two decisions are inapposite because they address the validity of the lien itself, rather than the perfection of an otherwise valid lien.
 
 See Duke University Med. Ctr.,
 
 89 N.C.App. at 720, 367 S.E.2d at 7 (“Since the action for the child’s damages was instituted in the Edgecombe County Superior Court and plaintiffs did not file a claim for their lien with the Clerk of that court within the time designated by the statute, they are not entitled to a lien under its provisions, as the trial court correctly ruled.”);
 
 In re Harris,
 
 50 B.R. at 161 (“Consequently, because Family Hospital failed to present evidence that it complied with the requirements of WIS. STAT. § 779.80 for obtaining a hospital lien, the court finds that Family Hospital does not have a valid hospital lien.”).
 

 In
 
 Melichar,
 
 the third case cited by the Gann parties, a New York intermediate appellate court affirmed the decision of the trial court without an opinion, 256 A.D. 962, 9 N.Y.S.2d 1016 (1939), and New York’s highest appellate court dismissed a subsequent appeal of that decision. 281 N.Y. 665, 22 N.E.2d 488;
 
 see also
 
 281 N.Y. 671, 22 N.E.2d 868.
 
 [14]
 
 The dissent to the decision of the intermediate appellate court suggests that the trial court entered a summary judgment against the hospital in that case because the hospital had failed to timely perfect its lien. 256 A.D. 962, 9 N.Y.S.2d 1016 (Dore, J., dissenting). Although the affirmance by the intermediate appellate court in
 
 Melichar
 
 may provide marginal support for the Gann parties’ argument that there are states that have narrowly construed their hospital-lien-perfection statutes, the decision of the intermediate appellate court in
 
 Melichar
 
 is without an opinion and does not provide any reasoning for its decision; therefore, we do not find it persuasive.
 

 We also note that this Court has held that actual notice can satisfy the requirement of constructive notice in the area of recordation of a conveyance.
 
 See Alexander v. Fountain,
 
 195 Ala. 3, 5, 70 So. 669, 669-70 (1916) (“From the earliest decisions of this court construing unrecorded conveyances void as to ‘purchasers without notice,’ etc., it has been held that actual notice is equivalent to the constructive notice afforded by the registration of the conveyance. The whole object and design of the statute is said to be to give notice of the existence of the conveyance.”
 
 *531
 
 (citing
 
 Ohio Life Ins. Co. v. Ledyard,
 
 8 Ala. 866 (1846);
 
 Gamble v. Black Warrior Coal Co.,
 
 172 Ala. 669, 55 So. 190 (1911))). Given the purpose of the hospital-lien statutes, this Court’s precedent of broadly interpreting Alabama’s hospital-lien statutes, and the decisions of other jurisdictions on this issue, we hold that where there is actual knowledge or where actual notice is given, constructive notice is not required.
 
 [15]
 

 Here it is undisputed that at the time the Gann parties attended mediation and subsequently entered into the settlement, all parties were aware of the hospitals’ liens. Because the Gann parties had actual knowledge of the hospitals’ liens, the hospitals’ failure to provide constructive notice under 35-ll-371(a), Ala.Code 1975, is immaterial to the validity and enforceability of the liens.
 

 III.
 
 Impairment of a Hospital Lien
 

 Once a hospital has perfected its lien, the lien is protected from impairment. The pertinent portion of § 35-11-372 provides:
 

 “During the period of time allowed by section 35-11-371 for perfecting the lien provided for by this division [10 days] and also after the lien provided for by this division has been perfected, as provided in this division, by any lienholder entitled thereto, no release or satisfaction of any action, claim, counterclaim, demand, judgment, settlement or settlement agreement, or of any of them, shall be valid or effectual as against such lien unless such lienholder shall join therein or execute a release of such lien.
 

 “Any acceptance of a release or satisfaction of any such action, claim, counterclaim, demand or judgment and any settlement of any of the foregoing in the absence of a release or satisfaction of the lien referred to in this division shall prima facie constitute an impairment of such lien, and the lienholder shall be entitled to a civil action for damages on account of such impairment, and in such action may recover from the one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment and maintenance.”
 

 Thus, under § 35-11-372, once a hospital has perfected its lien, no settlement is valid against that lien unless the hospital consents to the settlement. The statute further provides the hospital with a cause of action if its lien is, in fact, impaired.
 

 The Gann parties argue that even if the hospitals’ liens were perfected, the entry of a summary judgment in their favor was nonetheless proper because, they argue, Gann is the “master of his lawsuit” and was therefore entitled to choose to dismiss his personal-injury claims and to pursue only his wrongful-death claim.
 
 [16]
 
 Under the facts of this case, we disagree.
 

 
 *532
 
 Although this Court has determined that a hospital lien does not attach to the proceeds of a wrongful-death claim,
 
 Jones, supra,
 
 the hospitals’ liens did, in fact, attach to the personal-injury claims.
 
 See
 
 § 35-11-370 (“Any ... hospital authority or corporation operating a hospital in this state shall have a lien for all reasonable charges for hospital care ... of an injured person ... upon any and all actions [and] claims ... accruing to the person to whom such care ... was furnished, or accruing to the legal representatives of such person.”). The hospitals’ liens were perfected by actual knowledge; therefore, “no release or satisfaction of any action, claim, counterclaim, demand, judgment, settlement or settlement agreement, or any of them, [is] valid or effectual as against [the hospitals’ liens]” unless the hospitals joined the settlement or executed a release of the liens. § 35-11-372, Ala.Code 1975. The Gann parties settled not only the wrongful-death claim, but also the personal-injury claims. Pursuant to the settlement, Gann dismissed the personal-injury claims and released the Etowah defendants “from any and all present and future claims, demands, actions, causes of action, suits, damages, loss and expenses, of whatever kind or nature, for or on account of anything relating in any manner whatsoever” to the May 22, 2004, accident. The settlement is broad enough to encompass the personal-injury claims, and the fact that it was made “in the absence of a release or satisfaction of [a hospital] lien” constitutes a prima facie case of impairment of the hospitals’ liens; thus, the hos-pitáis are entitled to institute a civil action for damages on account of such impairment.
 
 Ex parte Infinity Southern Ins. Co.,
 
 737 So.2d at 464; § 35-11-372, Ala. Code 1975.
 

 The hospitals’ civil action must “be commenced against the person liable for such damages within one year after the date such liability shall be finally determined by a settlement!,] release!,] covenant not to sue[,] or by the judgment of a court of competent jurisdiction.”
 
 [17]
 
 § 35-11-372, Ala.Code 1975. The settlement was signed on January 16, 2006, and the hospitals did not file their impairment claim against Cory Watson and Gann until January 17, 2007; therefore, the summary judgment in favor of these two defendants is due to be affirmed because the hospitals’ impairment claim against them was not filed “within one year after the date such liability [was] finally determined by [the] settlement!,] release!,] covenant not to sue[,] or by judgment of a court .... ” § 35-11-372, Ala.Code 1975.
 

 IV.
 
 The Doctrine of Res Judicata
 

 Finally, the Gann parties argue that the summary judgment of the trial court in their favor is due to be upheld because, they argue, UAB Hospital’s impairment claim is barred by the doctrine of res judicata. “Two causes of action are the same for res judicata purposes when the following four elements are satisfied: ‘(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdic
 
 *533
 
 tion, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.’ ”
 
 Chapman Nursing Home, Inc. v. McDonald,
 
 985 So.2d 914, 919 (quoting
 
 Equity Res. Mgmt., Inc. v. Vinson,
 
 723 So.2d 634, 636 (Ala.1998)).
 

 In denying the Gann parties’ summary-judgment motion on this ground, the trial court stated that “[i]n order for res judica-ta to be applicable, the prior judgment must have been on the merits of the litigation [and] [t]he denial of a motion to intervene, especially where it appears that the denial was based upon the timeliness of the motion, is not a decision on the merits of the underlying claim.” We agree.
 

 “ ‘If the judgment is general, and not based on any technical defect or objection, and the parties had a full legal opportunity to be heard on their respective claims and contentions, it is on the merits, although there was no actual hearing or argument on the facts of the case.’ ”
 
 Mars Hill Baptist Church of Anniston, Alabama, Inc. v. Mars Hill Missionary Baptist Church,
 
 761 So.2d 975, 978 (Ala.1999) (quoting 50 C.J.S.
 
 Judgment
 
 § 728 (1997)) (emphasis omitted). Although it may be true that the Etowah Circuit Court held a hearing on UAB Hospital’s motion to intervene, it appears that that coui't did not address and dispose of the intervention motion on the merits of UAB Hospital’s lien-impairment claim. Therefore, there was no prior adjudication on the merits, and we cannot affirm the judgment of the trial court on this basis.
 

 Conclusion
 

 For the forgoing reasons, we affirm the summary judgment entered in favor of Cory Watson and Gann, but we reverse the summary judgment in all other respects and remand this cause to the Jefferson Circuit Court for proceedings consistent with this decision.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . Section 35-11-370 provides:
 

 "Any person, firm, hospital authority or corporation operating a hospital in this state shall have a lien for all reasonable charges for hospital care, treatment and maintenance of an injured person who entered such hospital within one week after receiving such injuries, upon any and all actions, claims, counterclaims and demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person, and upon all judgments, settlements and settlement agreements entered into by virtue thereof on account of injuries giving rise to such actions, claims, counterclaims, demands, judgments, settlements or settlement agreements and which necessitated such hospital care, subject, however, to any attorney's lien.”
 

 [2]
 

 .. Section 35-11-371(a) provides:
 

 "In order to perfect such lien the operator of such hospital, before or within 10 days after such person shall have been discharged therefrom shall file in the office of the judge of probate of the county or counties in which such cause of action arose a verified statement setting forth the name and address of such patient, as it shall appear on the records of such hospital, tire name and location of such hospital and the name and address of the operator thereof, the dates of admission and discharge of such patient therefrom, the amount claimed to be due for such hospital care, and to the best of claimant’s knowledge, the names and addresses of all persons, firms or corporations claimed by such injured person, or the legal representative of such person, to be liable for damages arising from such injuries; such claimant shall also within one day after the filing of such claim or lien, mail a copy thereof by registered or certified mail, postage prepaid, for each person, firm or corporation so claimed to be liable on account of such injuries, at the addresses so given in such statement, and to the patient, his guardian or his personal representative at tire address given at the time of admission. The filing of such claim or lien shall be notice thereof to all persons, firms or corporations liable for such damages whether or not they are named in such claim or lien.”
 

 [3]
 

 . It appears that Patricia was a resident of St. Clair County and that an estate was opened in the Probate Court of St. Clair County.
 

 [4]
 

 . It appears that UAB Hospital actually attempted to move to intervene on the same day that the settlement was reached but failed to include with its motion the requisite filing fee. Thus, the filing date for the motion is December 5, 2006.
 

 [5]
 

 . The January 2007 amended complaint also alleged, among other things, that the hospitals were intended third-party beneficiaries of the settlement and that Cory Watson and Gann breached the settlement agreement by failing to satisfy the hospitals' liens.
 

 [6]
 

 . Gann and Cory Watson moved the trial court to dismiss the hospitals' claim against them alleging impairment of the hospitals' liens. The parties argued that the second amended complaint was filed a year and a day after the settlement was signed and, thus, that the statute of limitations had run on the hospitals' impairment claim as to Gann and Cory Watson.
 
 See
 
 § 35-11-372, Ala.Code 1975 (a lien-impairment action "shall be commenced against the person liable for such damages within one year after the date such liability shall be finally determined by a settlement release covenant not to sue or by the judgment of a court of competent jurisdiction”).
 

 [7]
 

 . The trial court also entered a summary judgment in favor of the Gann parties on the hospitals’ third-party-beneficiary claim. The hospitals, however, do not appeal that decision.
 

 [8]
 

 . We do not decide, nor are we asked to decide, whether hospital liens attach to claims that have “accrued” but that have not yet been asserted.
 

 [9]
 

 . The briefs and the record are silent as to whether the hospitals in this action, within one day of filing their respective liens, mailed a copy of the liens to the parties alleged to be liable for Patricia's injuries.
 

 [10]
 

 . UAB Hospital does not argue that Patricia’s date of death is not the date of "discharge.” In fact, in its lien filings, UAB Hospital provides the date of her death as the day of her discharge from the hospital.
 

 [11]
 

 . At the time of the
 
 Macon-Bibb County Hospital Authority
 
 decision, Ga.Code Ann., § 44-14-471, Georgia’s hospital-lien-perfection statute, provided:
 

 “In order to perfect the lien provided for in Code Section 44-14-470, the operator of the hospital, within 30 days after the person has been discharged therefrom, shall file in the office of the clerk of the superior court of the county in which the hospital is located and in the county wherein the patient resides, if a resident of this state, a verified statement setting forth the name and address of the patient as it appears on the records of such hospital; the name and location of the hospital and the name and address of the operator thereof; the dates of admission and discharge of the patient therefrom; the amount claimed to be due for the hospital care; and, to the best of the claimant’s knowledge, the names and addresses of all persons, firms, or corporations claimed by the injured person or the legal representative of the person to be liable for damages arising from the injuries. Such claimant shall also, within one day after the filing of the claim or lien, mail a copy thereof to any person, firm, or corporation claimed to be liable for the damages, said copy to be mailed to the address given in the statement. The filing of the claim or lien shall be notice thereof to all persons, firms, or corporations liable for the damages, whether or not they are named in the claim or lien.”
 

 The statute, however, was amended in 2002; it now provides, in part:
 

 "The failure to perfect such lien by timely complying with the notice and filing provisions ... shall invalidate such lien, except as to any person, firm, or corporation liable for the damages, which receives prior to the date of any release, covenant not to bring an action, or settlement, actual notice of a notice and filed statement made under subsection (a) of this Code section, via hand delivery, certified mail, return receipt requested, or statutory overnight delivery with confirmation of receipt.”
 

 [12]
 

 . The Georgia Court of Appeals adopted the federal court's decision in
 
 Thomas v. McClure,
 
 236 Ga.App. 622, 513 S.E.2d 43 (1999).
 

 [13]
 

 . The Gann parties also cite
 
 West Nebraska General Hospital v. Farmers Insurance Exchange,
 
 239 Neb. 281, 475 N.W.2d 901 (1991); however, the Supreme Court of Nebraska, instead of requiring strict compliance, held “that at least substantial compliance with the notice requirements [of Nebraska's hospital-lien-perfection statute] is necessary to perfect a hospital lien.” 239 Neb. at 289, 475 N.W.2d at 908. Therefore, this case does not support the Gann parties' argument that the hospital-lien-perfection statute should be strictly construed in this case.
 

 [14]
 

 . The appeal to the Court of Appeals of New York, New York’s highest appellate court, was dismissed as moot. 281 N.Y. at 665-66, 22 N.E.2d at 488.
 

 [15]
 

 . Not before us in this case is the question when there must have been actual knowledge of the existence of the hospital lien or when actual notice of such a lien must have been given.
 

 [16]
 

 . The Gann parties further argue that UAB Hospital waived its right to appeal because it failed to appeal the Etowah Circuit Court’s decision to deny UAB Hospital's motion to intervene in the Etowah action. Gann parties’ brief at 48. In support of this argument, the Gann parties cite
 
 Ex parte Smith,
 
 683 So.2d 431 (Ala.1996). This Court in
 
 Ex parte Smith
 
 granted certiorari review to determine ''[t]he preclusive effect of an administrative determination of a constitutional claim, when the aggrieved person [did] not seek judicial review of the administrative decision as authorized by law.” 683 So.2d at 433. This Court in
 
 Ex parte Smith
 
 addressed the failure of a party to pursue its statutory right to appeal an administrative decision to the circuit court, not a party’s failure to appeal an adverse ruling on a motion to intervene to an appellate court. We thus find
 
 Ex parte Smith
 
 
 *532
 
 inapposite and the Gann parties' argument unpersuasive.
 

 [17]
 

 . The final sentence of § 35-11-372 provides:
 

 "Such action shall be commenced against the person liable for such damages within one year after the date such liability shall be finally determined by a settlement release covenant not to sue or by the judgment of a court of competent jurisdiction."
 

 The original text of the act does not include commas between the words "settlement release covenant not to sue” in its final sentence. However, for clarity, we have bracketed in the commas where it appears that commas should be located.